305 F.2d 363
 UNITED STATES of America, for the Use and Benefit of MILES
LUMBER COMPANY, a corporation, and Miles Lumber
Company, a corporation, in its
Individual Capacity, Appellants,
v.
HARRISON AND GRIMSHAW CONSTRUCTION COMPANY, a partnership or
joint venture, consisting of the following individuals,
partnerships, and corporation: FloydAlfred Harrison, an
individual; Joe Bob Harrison, an individual; Five StarHomes,
Inc., anOklahoma corporation; Lake View Developers, Inc., an
Oklahoma corporation;Lorayne, Inc., an Oklahoma corporation;
Harrison Builders Supply Company, anOklahoma corporation;
Merit Realty Company, an Oklahoma corporation; PremiumRealty
Company, anOklahoma corporation; Floyd A. Harrison Realty
Company, Inc., an Oklahomacorporation; Country Club
Developers, Inc., an Oklahoma corporation; W. R.Grimshaw
Company, an Oklahoma corporation; and W. R. Grimshaw
Company, apartnership consisting ofWilliam Ray Grimshaw,
William Ray Grimshaw, Jr., and Harry Douglas Grimshaw;Hardy
Plywood and Door, Inc., a corporation; Texoma Distributors,
Inc., acorporation; Marshall Wholesale Lumber Company, Inc.,
a corporation; CarlMorris, an individualdoing business as
Carl Morris Construction Company; Standard Accident
InsuranceCompany, a corporation; National Surety
Corporation, a corporation; AetnaCasualty & Surety Company,
a corporation; New Amsterdam Casualty Company, acorporation;
TheTravelers Indemnity Company, a corporation; Paul W.
Anderson; Nathan A.Burkham; W. G. (Bud) Killion; Marjorie
Anderson; Florine Burkham; Betty AnnKillion; and Daniel E.
Hardy, Appellees.
 No. 6916.
 United States Court of Appeals Tenth Circuit.
 June 15, 1962.
 
 Robert B. Langworthy, Kansas City, Mo. (Billy S., sparks, Kansas City, Mo., Weary, Weary & Sangster, Junction City, Kan., and Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, Mo., were with him on the brief), for appellants.
 Remington Rogers, Tulsa, Okl., and F. Philip Kirwan, Kansas City, Mo. (Rogers & Litchfield, Tulsa, Okl., Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Okl., and Margolin & Kirwan, Kansas City, Mo., were with them on the brief), for appellees Harrison & Grimshaw Construction Company, Standard Accident Insurance Company, National Surety Corporation, Aetna Casualty & Surety Company, New Amsterdam Casualty Company, and The Travelers Indemnity Company.
 Paul W. Anderson, Marshall, Tex., William Hergenreter, and Garlinghouse, Shaw & Hergenreter, Topeka, kan., submitted a brief on behalf of appellees Paul W. Anderson and Marjorie Anderson.
 No appearance for any other appellee.
 Before PICKETT, LEWIS, and BREITENSTEIN, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The issue is whether the provisions of the Miller Act, 40 U.S.C.A. 270a and 270b, relating to bonds furnished to the United States by contractors engaged in the construction of federal public works, apply to a suit brought on a bond furnished by a contractor in connection with a military housing project under the Capehart Act.[1] If the Miller Act controls the notice given prior to suit was sufficient whereas if it does not, that notice was insufficient. The trial court denied the applicability of the Miller Act on the ground that a Capehart Act project was not a public work of the United States and dismissed the first of the 6 counts in the complaint. In so doing the court made the findings required for an interlocutory appeal under 28 U.S.C. 1292(b) and we allowed the appeal.
 
 
 2
 Miles Lumber Company (Miles) claims $27,059.66 for lumber furnished to subcontractors on a military housing project at Fort Riley, Kansas, and sues on the prime contractor's payment bond to recover that amount.
 
 
 3
 The Capehart Act amends Title VIII, 'Armed Services Housing Mortgage Insurance,' of the National Housing Act.[2] The purpose of the amendments was to provide 'the most practicable means of coping with the very serious housing problem * * * facing our military services.' While conceding the advantages of the use of appropriated funds, Congress 'recognized that budgetary considerations would not permit the expenditure in 1 or 2 fiscal years of the sums needed,' and accordingly provided for 'the utilization of private mortgage capital to be repaid from quarters allowances of eligible service personnel.'[3]
 
 
 4
 The statutory plan calls for construction by private entities with private funds advanced on the security of mortgages covering the housing to be constructed. The Federal Housing Administration insures the payment of the Mortgages. Eligibility for such insurance requires that the mortgaged property be held by a mortgagor approved by the Commissioner of the Housing Administration who may regulate the capital structure and methods of operation and may acquire, for not more than $100, stock or interest in the mortgagor.[4]
 
 
 5
 Each housing unit is placed under the control of the Secretary of Defense 'as soon as the unit is available for occupancy as determined by the Commissioner' and when the housing project is completed, the capital stock of the mortgagor, except that held by the Commissioner, is transferred to the Secretary of Defense,[5] who uses appropriations for quarters allowances to pay the mortgage.[6]
 
 
 6
 In the situation here presented the mortgagor-builder was Fort Riley C-1 Housing, Inc., a Kansas corporation, and the mortgagee-lender was the First National Bank and Trust Company of Tulsa, Oklahoma. The prime contractor was Harrison and Grimshaw Construction Company. A contract was made with the Department of the Army but that contract appears nowhere in the record and we are not advised of its terms.
 
 
 7
 A payment bond, executed in the amount of $3,542,050 by the prime contractor and four corporate sureties, was accepted by the United States. The bond named as obligees the mortgagor-builder and the mortgagee-lender. Its condition is prompt payment to claimants for labor and material furnished. A prerequisite to suit on the bond is notice to any two of the following, 'the principal, any one of the Obligees, or the Sureties above named' before the expiration of 90 days after the performance of the last work or the supplying of the last material or before the expiration of the time for filing a lien under state law. The bond provides that 'either the giving of notice, or the filing of lien, in accordance with the pertinent lien law of the place where the project is located is a sufficient notice.' Miles did not give the notice required by the bond.
 
 
 8
 The Miller Act provides that in order for a supplier of labor and material to a subcontractor to recover in a suit on a payment bond given by a prime contractor that supplier shall give notice of nonpayment to the prime contractor before the expiration of 90 days from the date on which the last labor was performed on, or materials furnished to, the project by him. Miles satisfied this requirement.
 
 
 9
 If a Capehart Act military housing project is not 'a public building or public work of the United States'[7] the Miller Act does not apply. There is no statutory definition of that phrase. In Title Guaranty & Trust Company of Scranton, Pennsylvania v. Crane Company, 219 U.S. 24, 33, 31 S.Ct. 140, 55 L.Ed. 72, the Supreme Court said that a work is public 'if it belongs to the representative of the public.'[8] United States v. Ansonia Brass and Copper Company, 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107, involved the relative rights of the United States and lien claimants on three vessels. As to two vessels, the construction contracts for which contained no provision for the passing of title to the United States on partial payments, the court upheld liens under state law for labor performed and materials furnished. The contract for the third vessel provided for passage of title to the United States on partial payment and the private liens were rejected. A claim that suppliers of materials to a contractor engaged in building mail truck bodies for the United States could recover under the Heard Act,[9] predecessor of the Miller Act, was rejected in United States for Use of Mengel Body Co., Inc., v. Metropolitan Body Co., 2 Cir., 79 F.2d 177, 178, the court saying that the 'mail truck bodies were at the risk of the builder and were its property during all the time they were being built.'
 
 
 10
 The authorities cited by Miles to sustain its claim that the Capehart Act project was a public work are not convincing. United States to Use of Noland Co., Inc., v. Irwin, 316 U.S. 23, 30, 62 S.Ct. 899, 86 L.Ed. 1241, held that a library built with federal funds under the authorization contained in the National Industrial Recovery Act was a public work within the meaning of the Miller Act but that holding was based on language appearing in the National Industrial Recovery Act. Lasley Const. Co. v. United States, 5 Cir., 285 F.2d 98; United States v. Ft. George G. Meade Defense Housing Corporation No. 1, D.C. Md., 186 F.Supp. 639; and Autrey & Goad Const. Co. v. Williams & Dunlap, D.C.W.D.La., 185 F.Supp. 802, all involved federal court jurisdiction and we see no jurisdictional problem here as the bond in suit was executed under a law of the United States.[10] United States v. Phoenix Assurance Company of New York, D.C.N.D.Calif., 163 F.Supp. 713, is distinguishable from the instant case on its facts. In United States, etc. v. Progressive Contractors, Inc., D.C.N.D., 196 F.Supp. 171, the court held that the notice provisions of the Miller Act control over the notice provisions of a Capehart Act bond but the decision makes no analysis of the problem and relies on cases of doubtful pertinence.
 
 
 11
 We are confronted here with a situation in which the project is built by a private entity with private funds at private risk. The property is encumbered by a mortgage given by a private mortgagor to a private mortgagee. Those furnishing labor and materials during project construction may assert liens under state law against the property.[11] The eventuality that title will vest in the United States does not make the project a public work. In Armstrong v. United States, 364 U.S. 40, 42, 80 S.Ct. 1563, 4 L.Ed.2d 1554, the issue was the right of material suppliers to recover on account of liens on boats built for the United States. Upon the default of the contractor the United States exercised a contract option and took over the uncompleted boats. The material suppliers claimed a lien under Maine law. Their claim was rejected by the Court of Claims on the ground that the construction contract contemplated that title would eventually vest in the United States and hence the United States had 'inchoate title' to the materials rendering them public works immune from lien. The Supreme Court reversed saying:
 
 
 12
 'We cannot agree that a mere prospect that property will later be owned by the United States renders that property immune from otherwise valid liens.
 
 
 13
 'The sovereign's immunity against materialmen's liens has never been extended beyond property actually owned by it.'
 
 
 14
 In the case at bar the materials were furnished during construction and while the record does not show when, if ever, the housing was taken over by the Secretary or the stock in the mortgagor-builder transferred to him, the statute requires such assumption of control only after completion. Under the principles stated in Armstrong the housing project was a private enterprise and not a public work when the materials were furnished. In such circumstances the Miller Act does not apply.
 
 
 15
 The seriousness of the problem compels us to pursue the question further. We are convinced that in any event Congress did not intend that the Capehart Act performance and payment bonds, and suits thereon, should be governed by the Miller Act.
 
 
 16
 The Capehart Act as passed in 1955 contained no provision for a bond. This was added by a 1956 amendment which reads:[12]
 
 
 17
 'Any such contract shall provide for the furnishing by the contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 1 of the Act of August 24, 1935 (19 Stat. 793 (Miller Act), and no additional bonds shall be required under such section.'
 
 
 18
 By this amendment Congress recognized the peculiar characteristics of a Capehart Act military housing project. Congress provided for performance and payment bonds with sureties satisfactory to the government and said that the furnishing of such bonds was a sufficient compliance with the Miller Act. It did not say that the provisions of the Miller Act apply to such bonds.
 
 
 19
 Miles contends that Capehart Act projects are public works within the ambit of the Miller Act and says, in effect, that congress so recognized by the provision of the 1956 amendment that the furnishing of the bonds there required 'shall be deemed a sufficient compliance' with 1 of the Miller Act. The theory is that there is no need for compliance if the Miller Act does not apply, and, hence, the mention of compliance presupposes that Capehart Act projects are public works.
 
 
 20
 In our opinion the conclusion does not follow. Congress realized the unusual situation created by the Capehart Act. The projects are of a private nature until completion and assumption of control by the government. The mortgagorbuilder has a contract with a construction company to build the project. The constructor looks to the mortgagor-builder for payment for his work and owes to the mortgagor-builder the obligation to perform. The ownership of $100 worth of stock of the mortgagor-builder by the Commissioner[13] does not make the United States either the owner or the paymaster. A rational approach to the problem requires that an obligee in the performance bond be the entity which owns the project and is in a position to enforce the construction contract.
 
 
 21
 Contemporaneous administrative construction aids us in the resolution of any doubts as to the congressional intent. Less than a month after the 1956 amendment became law, the Federal Housing Administration adopted the regulation found at 24 C.F.R. 292a.27 which, under the heading 'Armed Services Housing Insurance; Eligibility Requirements of Mortgage,' reads:
 
 
 22
 'Assurance for the completion of a project shall be a performance bond and a payment bond satisfactory to the Commissioner and the Secretary of Defense or his designee with the mortgagor and mortgagee as joint obligees.'
 
 
 23
 The naming of the mortgagor and mortgagee as joint obligees is a significant departure from a Miller Act bond in which the obligee is the United States[14] and points up the private nature of the project.
 
 
 24
 Further administrative actions emphasize the differences between a Capehart Act bond and a Miller Act bond. The bond in suit is written on 'FHA Form No. 2452 CP' and was accepted by the United States. The penal sum is $3,542,050 in spite of the fact that under the Miller Act the maximum payment bond required is $2,500,000.[15] The Miller Act was intended to protect labor and material suppliers on public works by providing a substitute for the remedies existing under state mechanics lien laws applying to private works.[16] The Capehart Act bond in issue specifically recognizes the possibility of a lien for labor and materials under the law of the place where the project is constructed. Under the Miller Act notice of a claim by a supplier of labor or material to a subcontractor need be given only to the prime contractor.[17] The bond before us requires notice to two of its parties.[18]
 
 
 25
 These variations from the Miller Act establish that those charged with the administration of the Capehart Act construed the 1956 amendment as providing for a bond other than and different from the bonds required by the Miller Act. Such interpretations made almost contemporaneously with statute enactment by men charged 'with the responsibility of setting its machinery in motion' are entitled to great weight.[19]
 
 
 26
 We are aware of the rule that the Miller Act is to be liberally construed to accomplish its purpose of protecting those who furnish labor and material in the performance of contracts for the construction of public works,[20] but that rule has no application here. We are concerned with a Capehart Act project bond and we are convinced that the Miller Act has no application to such a bond. The notice provisions of the bond govern. As these were not satisfied, Count 1 of the complaint states no claim and the judgment of dismissal was proper.
 
 
 27
 One point remains for disposition. Three of the defendants, Paul W. Anderson, Marjorie Anderson, and Daniel E. Hardy, were served outside of the State of Kansas. The trial court dismissed the entire case as to them and entered an appealable judgment under Rule 54(b), F.R.Civ.P. Rule 4(f), F.R.Civ.P., 28 U.S.C., limits the effective service of process other than subpoena to the territorial limits of the state in which the district court is held unless a federal statute permits extraterritorial service. As the action may not be maintained under the Miller Act the rule that in suits under that Act there may be extraterritorial service of process[21] does not apply. Hence, there is no basis for service outside of Kansas and no valid process submitting the three named defendants to the Jurisdiction of the United States District Court for the District of Kansas.
 
 
 28
 Affirmed.
 
 
 29
 PICKETT, Circuit Judge, (dissenting).
 
 
 30
 I cannot agree that a housing project constructed under the provisions of the Capehart Act[1] is not a public work of the United States within the meaning of the Miller Act.[2] If the contract for the housing project in this instance had been entered into between the United States and Harrison and Grimshaw Construction Company, and payment for the project had been made from appropriated funds, no one would question the applicability of the Miller Act. Lasley Const. Co. v. United States ex rel. Westerman, 5 Cir., 285 F.2d 98; Gypsum Contractors, Inc. v. American Surety Co., 37 N.J. 315, 181 A.2d 174 (May 7, 1962). Because funds were not currently available, the financing technique set forth in the Capehart Act was devised to permit the United States to acquire housing for members of its armed services on the installment plan, and the Act contemplates that the United States will be a party to any contract for the construction of housing pursuant to its provisions. The houses are to be built on land owned by the United States, and title to the houses passes to the United States as they are completed. Stripped of its formalism, the arrangement is simply one whereby the United States is able to finance the construction of housing projects through loans obtained by its prime contractor, which the United States is obligated to repay. Such a project is not in reality one built by a private entity with private funds at private risk. In the light of the frequently expressed policy that the provisions of the Miller Act are to be liberally construed to carry out its purpose,[3] the Miller Act would apply absent any requirement for bonds in the Capehart Act.
 
 
 31
 The majority opinion cites Armstrong v. United States, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554, for the proposition that these housing projects are not public works and are therefore subject to local lien law. In that same case the Supreme Court also holds that once title to the property has passed to the United States the liens cannot be enforced. I am convinced that when the Capehart units pass into the control of the Secretary of Defense that there is not such a taking as would entitle the materialmen or laborers to be compensated for their property which, according to the Armstrong case, amounts to a lien. This, of course, simply emphasizes the necessity for requiring payment bonds for such housing projects, and the distinctive bond visualized by the majority opinion would certainly fit the demands of public policy.
 
 
 32
 The key to this problem lies in the 1956 amendment to the Capehart Act,[4] which is quoted in the majority opinion, and specifically in the phrase 'the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 1 of the Act of August 24, 1935 * * *.' The majority read this language as excusing the furnishing of Miller Act bonds for Capehart Act projects, and this then leads them to conclude that Congress clearly intended that the provisions of the Miller Act would not apply to Capehart Act projects. Conceding that the statutory language is inartful, and it has not been explained in the legislative history, but considering all of the circumstances, I think that the cases which hold that the two statutes are to be considered in pari materia, and that the bonds described in the 1956 amendment to the Capehart Act are to be treated as having been furnished in lieu of the bonds described in Section 1 of the Miller Act, are correct. Lasley Const. Co. v. United States, supra; United States for Use and Benefit of Robertson Lumber Co. v. Progressive Contractors, Inc., D.N.D., 196 F.Supp. 171; United States to Use of Acme Furance Fitting Co. v. Ft. George G. Meade Defense Housing Corp., No. 1, D.Md., 186 F.Supp. 639; Autrey v. Williams and Dunlap, W.D.La., 185 F.Supp. 802; Gypsum Contractors, Inc. v. American Surety Co., supra. The majority state that these cases were concerned only with whether federal jurisdiction existed, but such an interpretation fails to accord them their full significance since on this point what is said is in direct conflict with the conclusion of the Court of Appeals for the Fifth Circuit in Lasley Const. Co. v. United States, supra, and the views of the district courts in the other cases cited.[5] I am certain that the view adopted in those decisions accords to the statutory language its most logical interpretation. It follows that the provisions of Section 2 of the Miller Act, 40 U.S.C.A. 270b, including the notice requirement, should be read into the bond.[6]
 
 
 33
 The administrative form for bonds apparently furnished for Capehart Act construction is not that contemplated by the Miller Act. If this is to be considered as an administrative interpretation that the Miller Act was not applicable, then I think the interpretation was wrong. There could be no purpose or reason for Congress to state that the furnishing of a bond should be deemed a sufficient compliance with the provisions of Section 1 of the Miller Act if it was not intended that the bond furnished would be considered a Miller Act bond from that point forward.
 
 
 34
 For the reasons stated, I would reverse the judgment.
 
 
 
 [1]
 See 42 U.S.C.A. 1594 as amended in 1956, 70 Stat. 1109-1110
 
 
 [2]
 69 Stat. 646 and 70 Stat. 1109. The pertinent provisions are found at 12 U.S.C.A. 1748a-1748i and 42 U.S.C.A. 1594, 1594a-1594g
 
 
 [3]
 House Report No. 2363, June 15, 1956 (To accompany H.R. 11742), 84th Congress, 2d Session, 3 U.S.Code Cong. and Adm.News 1956, pp. 4509, 4546
 
 
 [4]
 12 U.S.C.A. 1748b(b)(1)
 
 
 [5]
 42 U.S.C.A. 1594(a)
 
 
 [6]
 42 U.S.C.A. 1594b
 
 
 [7]
 40 U.S.C.A. 270a(a)
 
 
 [8]
 See also Ellis v. United States, 206 U.S. 246, 259, 27 S.Ct. 600, 51 L.Ed. 1047
 
 
 [9]
 28 Stat. 278, as amended 33 Stat. 811
 
 
 [10]
 See 28 U.S.C. 1352 and Adams v. Greeson, 10 Cir., 300 F.2d 555, 557
 
 
 [11]
 The bond in suit expressly recognizes such lien liability. See United States v. Ansonia Brass and Copper Company and United States, etc. v. Metropolitan Body Co., both supra
 
 
 [12]
 70 Stat. 1110, 507. See 42 U.S.C.A. 1594
 
 
 [13]
 12 U.S.C.A. 1748b(b)(1)
 
 
 [14]
 40 U.S.C.A. 270a provides that the contractor 'shall furnish to the United States' the required bond and 270b requires that a suit for non-payment of labor and material claims asserted in an action on a payment bond shall be brought 'in the name of the United States.' See United States v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776, and Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 105, note 4, 64 S.Ct. 890, 88 L.Ed. 1163
 
 
 [15]
 40 U.S.C.A. 270a(a)(2)
 
 
 [16]
 United States v. Carter, supra, 353 U.S. at 216, 77 S.Ct. 793, 1 L.Ed.2d 776; Arthur N. Olive Co., Inc. v. United States, 1 Cir., 297 F.2d 70; United States v. Harman, 4 Cir., 192 F.2d 999, 1000
 
 
 [17]
 40 U.S.C.A. 270b(a)
 
 
 [18]
 The more intricate financing arrangements prescribed in Capehart Act projects justifies the requirement of dual notice
 
 
 [19]
 United States v. American Trucking Associations, Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345
 
 
 [20]
 Fanderlik-Locke Co. v. United States ex rel. Morgan, 10 Cir., 285 F.2d 939, 942, certiorari denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823
 
 
 [21]
 Limerick v. T. F. Scholes, Inc., 10 Cir., 292 F.2d 195, 196
 
 
 [1]
 Housing Amendments of 1955, 403 et seq., 69 Stat. 651 (1955), as amended, 42 U.S.C.A. 1594 et seq
 
 
 [2]
 49 Stat. 793 (1935), 40 U.S.C.A. 270a et seq
 
 
 [3]
 E.g. United States v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776; Clifford F. MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163; T. F. Scholes, Inc. v. United States for Use of H. W. Moore Equip. Co., 10 Cir., 295 F.2d 366; Limerick v. T. F. Scholes, Inc., 10 Cir., 292 F.2d 195; Fanderlik-Locke Co. v. United States ex rel. Morgan, 10 Cir., 285 F.2d 939, cert. denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823
 
 
 [4]
 Housing Act of 1956, Section 507, 70 Stat. 1110 (1956), 42 U.S.C.A. 1594(a)
 
 
 [5]
 The court in Lasley Const. Co. v. United States, 285 F.2d 98, 100, said:
 'Appellants' argument is plausible, but we are not persuaded by it. We think it clear that Congress considered that but for the provisions of the Capehart Act, quoted above, the contractor would be required to supply a builder with a Miller Act bond before entering upon a Capehart construction job, because such a project falls within the language 'construction * * * of any public building or public work of the United States;' that the purpose of the bonding provisions in the Capehart Act was merely to substitute it for the bond described in 40 U.S.C.A. 270b(b), quoted above, and that the remainder of the provisions of the Miller Act would apply to the Capehart bond just as they do to a Miller Act bond. This would, of course, include the provisions conferring jurisdiction on the district courts of the United States.'
 
 
 [6]
 Cf. People v. Metropolitan Surety Co., 211 N.Y. 107, 105 N.E. 99; 11 C.J.S. Bonds 40(e) (1938); 91 C.J.S. United States 107 (1955). See, e.g. Scott v. Kansas W. Pipe Line Co., 158 Kan. 160, 146 P.2d 366; Petition of Leon Keyser, Inc., 97 N.H. 404, 89 A.2d 917; Philip Carey Mfg. Co. v. Peerless Cas. Co., 330 Mass. 319, 113 N.E.2d 226; United Tile Co. v. Kermit Independent School Dist., Tex.Civ.App., 273 S.W.2d 434; Annos. 77 A.L.R. 21, 47 and 166 (1932), 89 A.L.R. 446 (1934), and 118 A.L.R. 57 (1939)