**Tom SULLIVAN, et al., Plaintiffs,**

v.

**FARAS–RLS GROUP, LTD.,
et al., Defendants.**

**No. CIV 91–1507–PHX–EHC.**

United States District Court
D. Arizona.

July 23, 1992.

John Austin Lauback, Sacks Tierney & Kasen PA, Phoenix, Ariz., William L. Tifft, Globe, Ariz., for plaintiffs.

Diana J. Calais, Globe, Ariz., for defendants.

## ORDER DENYING RECONSIDERATION AND GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT

CARROLL, District Judge.

## I. MOTION FOR RECONSIDERATION

### A. Background

Plaintiffs brought this suit under the Miller Act to obtain payment for the labor and materials supplied in the construction of the United States Post Office building in San Carlos, Arizona. Plaintiffs claim that they expended work (labor and materials) valued at over $25,000.00, and that the prime contractor (of which defendant Margarite Faras is a partner or joint venturer) has refused to pay them for their work. Moreover, the bonding company that was utilized by the prime contractor became insolvent and was without a license to issue payment and performance bonds.

Defendant Margarite Faras filed a motion to dismiss this action for lack of subject matter jurisdiction, arguing that the Miller Act is not properly invoked in this case. On February 3, 1992, this Court held oral argument on the matter and denied the motion to dismiss.[1] Defendant now seeks reconsideration of that order.

### B. Discussion

The issue presented to the Court was whether the construction of the United States Post Office building in San Carlos is a contract for a "public building or public work of the United States" within the meaning of the Miller Act. This Court found, and continues to find, that the building at issue is a public work of the United States. Therefore, this action is properly covered by the Miller Act.

---

1. The Court's order was made orally; no subsequent written order was issued.

The Miller Act provides that all persons contracting "for the construction, alteration, or repair of any public building or public work of the United States" shall provide a payment bond "for the protection of all persons supplying labor and material." 40 U.S.C. § 270a. The purpose of the Act is to provide a means of securing private obligations relating to the construction of public facilities. *U.S. v. C.J. Elec. Contractors*, 535 F.2d 1326 (1st Cir.1976). Furthermore, courts have consistently held that the Act should be liberally construed to serve its purpose of protecting those whose labor and materials go into public projects. *See* 40 U.S.C.A. § 270a, note 2.

In her motion to dismiss, defendant argues that the Act is meant to cover only the construction of *federal* public buildings, citing *United States v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957); and that suits brought under the Act must be brought "in the name of the United States for the use of the person suing." 40 U.S.C. § 270b.[2] Defendant further argues that neither the United States, nor anyone authorized to act on its behalf, was a direct contracting party; and the bond was not executed in the name of the United States. Defendant contends that the building at issue was contracted for by the San Carlos Apache Tribe, and that their plans to lease the building to a federal agency to use as a United States Post Office does not implicate the Miller Act.

Plaintiffs respond that the construction project is a "public work" as it was: (1) initiated by the United States Postal Service, (2) funded with money through the United States Bureau of Indian Affairs, (3) built to Postal Service specifications and repeatedly inspected by Postal Service construction inspectors who follow standards established by federal agencies for the construction of federal projects, (4) located on a "federal Indian reservation" and (5) leased to the federal government.

Plaintiffs argue, and defendant does not dispute, that the building was to be constructed specifically for leasing to the United States to be used as a post office. The lease provides for a term of twenty (20) years, with an option to renew for an additional ten years.

Title 39, United States Code, section 401 provides for the general powers of the Postal Service, including the following:

> (5) to acquire, in any lawful manner, such personal or real property, or any interest therein, as it deems necessary or convenient in the transaction of its business; to hold, maintain, sell, lease, or otherwise dispose of such property or any interest therein; and to provide services in connection therewith and charges therefor;

> (6) to construct, operate, lease, and maintain buildings, facilities, equipment, and other improvements on any property owned or controlled by it, including, without limitation, any property or interest therein transferred to it under section 2002 of this title;

*See also*, former 39 U.S.C. §§ 2102, 2103 and 2106–2108, having to do with leasing authority for post offices.

Title 39, United States Code, section 404(a)(3) authorizes the Postal Service "to determine the need for post offices ... and to provide such offices, facilities, and equipment as it determines are needed." Section 410 references applications of other laws to Postal Service "contracts, property, works." Paragraph (4)(B) provides for the applicability of Title 40, section 270(a)–(e) "(known as the Miller Act, relating to performance bonds);" paragraph d of section 410 refers generally to rental properties for Postal Service purposes.

In *United States ex rel. Noland Co. v. Irwin*, 316 U.S. 23, 62 S.Ct. 899, 86 L.Ed. 1241 (1942), the Supreme Court found that a library, wholly owned by Howard University but built with federal funds, was a public work within the meaning of the Miller Act. The Court defined "public works" to include:

> "United States to the use of Tom Sullivan and Claudia Sullivan."

---

**2.** In response to this point, plaintiffs request leave to amend their complaint (correct the caption) to assert their claim in the name of the

any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public. *Id.* at 29, 62 S.Ct. at 902. The Court determined that ownership of the building was not a decisive factor in determining its public nature, stating that "we are no longer left to such vague guidance." [3] *Id.; see also United Bonding Ins. Co. v. Catalytic Constr. Co.,* 533 F.2d 469, 473 (9th Cir. 1976) ("Miller Act is applicable to any 'public building or public work,' whether or not the government is a party to the construction contract").

■ Under the *Irwin* standard, the United States Post Office building is properly classified as a "public work." The structure was built entirely with federal funds. Further, the building of the Post Office clearly benefits the interest of the general public. That the United States government was not a contracting party nor named on the bond are not controlling factors in the Miller Act analysis.

Defendant relies substantially on *TIJ Materials Corp. v. Green Island Construction Co.,* 131 F.R.D. 31 (1990). The construction project in *TIJ* was a state highway work, partially funded by the federal government. In *TIJ,* the magistrate determined that he lacked subject matter jurisdiction over the action, stating:

Here, the United States was not a directly contracting party, nor was the bond executed in the name of the United States. Additionally, the contract, though not formally executed with the United States, had not been executed by persons with authority to contract on behalf of the United States.

*Id.* at 34. (citations omitted). In reaching its result, the magistrate found importance in the fact the "plaintiff had in fact filed suit in a state court on the same claims presented in the federal action at bar, so

that it would appear that a remedy was available in the state court." *Id.*

Defendant argues that the construction contract at issue was not executed by someone with the authority to act on the United States' behalf. Further, defendant claims that plaintiffs have an adequate remedy in state court. Defendant asserts that the Corporate Charter of the San Carlos Tribe has a waiver of sovereign immunity. Further, the Tribe's agreement with the prime contractor contains an arbitration clause. Defendant maintains that plaintiff can pursue arbitration which can be enforced in state court.

This Court finds little merit in defendant's arguments. Plaintiffs contend, and this Court agrees, that *TIJ* is distinguishable from the present case. As plaintiffs note, in *TIJ* (1) there was only partial federal funding for the state highway, (2) the plaintiff had no direct contract with the prime contractor, (3) the project was not built for leasing to the United States, and (4) the project was to benefit the people of Rhode Island and not the general public of the United States.

Note that in *United State v. Able Bituminous Cont.,* 640 F.Supp. 69 (D.Mass. 1986), it was determined that a contract with the United States for construction on an interstate highway in Massachusetts was for a "public work" of the United States. The court found that case law does not suggest a different result even though the state partially funded the project.

Further, in *Fidelity and Deposit Company of Maryland v. Harris,* 360 F.2d 402 (9th Cir.1966), the United States acting through the National Aeronautics and Space Administration entered into a written contract with California Institute of Technology (CIT) under which CIT agreed to operate a Jet Propulsion Laboratory. The Laboratory was deemed to be a "public building or public work" within the Miller Act. *See also Autrey v. Williams,* 343

---

**3.** Defendant cites *U.S. v. Carter,* 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), for the proposition that the Miller Act only covers *federal* public buildings, implying that the building must be federally owned. Plaintiff properly notes that defendant's citation of *Carter* for such a proposi-

tion is misleading. Indeed, *Carter* was not resolving an issue of what was a public work. Instead, the court was determining whether pension benefits constituted "payment" for materials and labor within the Miller Act.

F.2d 730 (5th Cir.1965) (Capehart Housing projects are "public works" within the Miller Act).

There is limited case law directly on point. However, a logical reading of the cases and consideration of the purposes for the Miller Act indicate that the building at issue is covered by the Act. An underlying purpose of the Miller Act is to protect persons supplying materials and labor for what is essentially a public building. It is self-evident that anyone supplying services to the general contractor building the San Carlos Post Office would conclude that they were investing time and materials on what was essentially a federal project.

The case law consistently holds that the Miller Act is to be interpreted liberally. Ownership is not a controlling factor and nothing can be deemed more public in nature than a United States Post Office. Presumably, the Bureau of Indian Affairs, acting pursuant to its federal authority, was responsible for providing funds and for the leasing agreement.

The only authority, noted by the Court, on point is referenced in an annotation in 48 A.L.R. 4th 1170, 1199 and titled "What Constitutes 'Public Works' with Statute Relating to Contractor's Bond." Section 16 of the annotation is captioned "Lease-purchase agreement for Post Office building:"

It was the opinion of the Comptroller General of the United States in the following case that a contract with a private entity to custom-build a particular building and then lease it to the United States Post Office with an option for eventual outright purchase was one for "public works of the United States" so as to require of the contractor the bonds provided for in the Miller Act.

Determining that the Miller Act, together with other federal statutes regulating public works, applied to a "lease-purchase" agreement for the privately financed construction of a building to Post Office Department specifications, the building to be then leased to the Post Office Department, with the government taking title at the close of the term of the lease, the Comptroller General of the United States, in Comp.Gen. B–122382 (1955) 34 Op (US) Comp Gen 697, rejected a view that such a contract was not "public" because there would be no title vesting the United States during the applicable lease term, and no federal funding during the initial construction. Pointing to the legislative history of the statute authorizing such lease-purchase agreements as indicating the applicability of the "public works" standards in question, the Comptroller General said that under the proposed agreement, involving a ground lease of government-owned land, together with the other terms above noted, it "reasonably" might be assumed that the contracts were "agreements for the construction of buildings to which the United States [was] a party," and that the leasing of the buildings was "only incidental to the construction." Citing earlier Supreme Court authority to the effect that a "public work" was any in which the United States was interested and which was done for the public and for which the United States was authorized to expend funds, the Comptroller General said that ownership of the works in question was not the sole criterion for applicability of the statutes. Further declaring that construction of a post office would promote a public object and benefit the public at large, the Comptroller General observed that, despite initial private funding, the cost of the construction would eventually be paid from appropriated funds in the course of the lease tenure of the Post Office Department, and determined that these matters made the work sufficiently "public" to invoke the requirements of the Miller Act and other federal statutes in question.

C. Conclusion

This Court has found that the building at issue is a public work and this matter falls within the purview of the Miller Act. Defendant Margarite Faras has failed to make the necessary showing to justify reconsideration of the order. *See generally Settino v. City of Chicago*, 642 F.Supp. 755, 760 (N.D.Ill.1986). Defendant's motion contains no new arguments, and only

asserts that this Court was incorrect in its decision.

 A motion to reconsider is not appropriate to ask the Court to "rethink what the Court had already thought through." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va. 1983). Arguments that the court was in error on the issues it considered should be directed to the court of appeals. *See Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6, 7 (N.D.Ill.1983), *aff'd,* 770 F.2d 98 (7th Cir.1985).

## II. MOTION FOR CLARIFICATION

On February 6, 1992, this Court entered a written order denying defendant Margarite Faras' motion to set aside the entry of default against defendant Faras–RLS. On February 14, 1992, defendant Margarite Faras moved this Court for clarification of its order denying the motion to set aside entry of default. In the motion, plaintiff submits that Faras–RLS was not served with the complaint.

The Court has fully reviewed the record in this case and finds no indication that "Faras–RLS," "Faras–RLS Group, Ltd.," or "RLS Group, Ltd." was served. Accordingly, this Court will set aside the entry of default against Faras–RLS Group, Ltd. and RLS Group, Ltd. Rule 55(c), Fed.R.Civ.P.

Accordingly,

IT IS ORDERED denying defendant's Motion for Reconsideration (dkt # 36) of defendant's Motion to Dismiss,

IT IS FURTHER ORDERED granting defendant's Motion for Clarification (dkt # 36),

IT IS FURTHER ORDERED vacating this Court's previous order, filed February 6, 1992, denying defendant's Motion to Set–Aside Entry of Default (dkt # 31),

IT IS FURTHER ORDERED setting aside the Clerk's entry of default and default judgment against Faras–RLS Group, Ltd. and RLS Group, Ltd.,

IT IS FURTHER ORDERED setting this matter for a telephone conference on the 28 day of September, 1992 at 11:00 AM, before the Honorable Earl H. Carroll. Plaintiffs shall initiate the conference call and the parties shall jointly phone the Court at 602–379–4955.