**DEFENDERS OF WILDLIFE, George Marsik, Jerry Van Gasse, and James A. Slingluff, Plaintiffs,**

v.

**Carol BROWNER, Administrator, United States Environmental Protection Agency, Felicia Marcus, Regional Administrator, EPA Region IX, and United States Environmental Protection Agency, Defendants.**

Civ. No. 93–234 TUC ACM.

United States District Court,
D. Arizona.

Nov. 2, 1995.

Order Denying Reconsideration
Dec. 21, 1995.

David S. Baron, Tucson, AZ, for plaintiffs.

Karen Egbert, Washington, DC, for defendants.

## MEMORANDUM OPINION

MARQUEZ, Senior District Judge.

*A.  Background*

On January 4, 1995, this Court dismissed Plaintiffs' action brought under the citizen suit provisions of the Clean Water Act (CWA), § 505(a)(2), 33 U.S.C. 1365(a). Thereafter, the Court vacated its judgment and granted Plaintiffs leave to file an amended complaint to add an unreasonable delay claim under the Administrative Procedure Act (APA).  Plaintiffs filed their Amended Complaint on May 19, 1995.  The parties stipulated to resolve the matter by summary judgment and the motion has been fully briefed by the parties.

Plaintiffs invoke the CWA § 303(c),[1] which provides that from time to time, but at least once every three years, beginning October

---

1.  33 U.S.C. 1313(c) *et seq.*

18, 1972, the State shall hold public hearings and, as appropriate, modify and adopt water quality standards.[2] 33 U.S.C. 1313(c)(1). All revised or new standards shall be submitted to the Administrator. 33 U.S.C. 1313(c)(2). If within 60 days of submission, the Administrator determines that the revised or new standard meets the requirements of this chapter, such standard shall thereafter be the water quality standard for the State. 33 U.S.C. 1313(c)(3). If the Administrator determines that the standard does not satisfy the requirements of this chapter, the Administrator "shall not later than the 90th day after the date of submission of such standard, notify the State and specify the changes to meet such requirements." *Id.* Thereafter, the State has 90 days to adopt the changes or the Administrator shall promulgate such standard. *Id.* Promulgation shall be pursuant to paragraph (4) of the subsection, as follows:

(4) The Administrator shall *promptly* prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved—

(A) if a revised or new water quality standard submitted by such State under paragraph (3) of this subsection for such waters is determined by the Administrator not to be consistent with the applicable requirements of this chapter, or

(B) in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this chapter.

The Administrator shall promulgate any revised or new standard under this paragraph not later than 90 days after he publishes such proposed standards, unless prior to such promulgation, such State has adopted a revised or new water quality standard which the Administrator determines to be in accordance with this chapter.

33 U.S.C. 1313(c)(4) (emphasis added).

Originally, Plaintiffs sought to compel the EPA to approve or disapprove Arizona's proposed water quality standards because at the time Plaintiffs filed this action, Arizona had submitted a major revision of its water quality standards to the EPA and the EPA acted within the requisite 60 days to approve certain standards, but failed to act to disapprove standards within the statutorily allocated 90 days. The EPA issued final disapprovals of certain water quality standards on September 9, 1993, and April 29, 1994, respectively, pursuant to settlement negotiations resulting from this lawsuit.[3] Arizona refused to make the necessary changes within the allowed 90 days. Thereafter, the issue became the timing for EPA to propose and promulgate water quality standards for Arizona in relation to the statutory mandate that the EPA act "promptly." After this Court found that such a demand could not be made under the citizen suit provision of the CWA, Plaintiffs amended their Complaint and now proceed with this unreasonable delay claim.

*1. Plaintiffs' Motion for Summary Judgment*

Plaintiffs frame the egregiousness of Defendants' delay with the following history:
Prior to the State's 1992 revision, Arizona's last review was in 1986. Once Arizona revised its standards, it took almost two years after the statutory deadline for EPA to issue the required approvals/disapprovals. Since issuing the final disapprovals, more than 18 months have elapsed without any activity by the EPA to promulgate the State's water quality standards.
It is now and has always been the contention of the EPA, that the appropriate manner for correcting Arizona's deficient standards is to let the State address the disap-

---

**2.** A water quality standard is the method of expressing the desired condition of a waterway. The standard generally designates the uses of the waterway, the pollutant concentration level representing a quality of water that will support the particular designated uses, and antidegradation policy to protect existing uses and high quality waters.

**3.** Pursuant to the parties stipulation, on September 7, 1994, this Court dismissed portions of Plaintiffs' Complaint alleging that the EPA failed to act to approve or disapprove the State's proposed standards.

provals. EPA intends to rely solely on Arizona's triennial water quality review/revision process which is currently underway. The revision is already a half a year late[4] and the State does not expect to complete it until October, 1996.

Plaintiffs contend that the unreasonableness of the delay is compounded because promulgation of standards for Arizona should not be a particularly onerous task:

> Of the six[5] disapprovals, three were disapproved because they were impermissible exemptions: 1) mining related impoundments were excepted from Arizona's water quality standards; 2) lack of "fish consumption" protection; and 3) waiver of toxic standards below quantitation levels. EPA needs simply to repeal these exemptions.

> Two of the disapprovals issued by the EPA in September 1993 had been identified by the Agency in 1986 as deficient. The EPA conditioned its approval of that revision on the State's development of implementation procedures for the State's narrative standards for nutrients and toxicity.

> The EPA's disapproval notices gave fairly detailed explanations of what needed to be done by the State to correct its water quality standards. Therefore, the EPA need only do now what it instructed the State to do some 18 months ago.

See Plaintiffs' Reply in Support of First Motion for Summary Judgment at 9–10 (filed 10/17/94).

Plaintiffs ask this Court to find unreasonable delay and order Defendants to propose standards for the State within 90 days. This is the amount of time allowed under 33 U.S.C. § 1313(c)(3) for states to propose and promulgate standards which have been disapproved by EPA. Section 1313(c)(4) provides an additional 90 days after standards are proposed, for EPA's final promulgation of the standards.

### 2. Defendants' Cross-motion for Summary Judgment

The EPA contends that its delay is not unreasonable in light of the following:

1) The State's current triennial review addresses the disapprovals; 2) EPA's inability to complete promulgation of water quality standards more quickly than the State's triennial review; 3) EPA's ability to ensure through its permit writing authority that Arizona waters can be fully protected; and 4) Other EPA water pollution control efforts that would be curtailed by its undertaking a rulemaking for Arizona.

### B. Discussion

Plaintiffs submit there are a number of tests utilized by various courts to determine whether an agency has unlawfully withheld or unreasonably delayed action within the meaning of a statute. Essentially, all tests involve an assessment of the reasonability of the delay in the context of the statute which authorizes the agency's action. They are as follows:

1. Delay which conflicts with a statutory mandate for timely action is unreasonable. *Soler v. Scott,* 942 F.2d 597, 603 (9th Cir.1991), *vacated on other grounds, Sivley v. Soler,* 506 U.S. 969, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992).

2. Delay is unreasonable where it undermines the statutory purpose. *In re Center for Auto Safety,* 793 F.2d 1346, 1353–54 (D.C.Cir.1986); *Public Citizen Health Research Group v. Food and Drug Admin.,* 740 F.2d 21, 32, 34 (D.C.Cir.1984); *N.R.D.C. v. E.P.A.,* 595 F.Supp. 1255, 1269–70 (S.D.N.Y.1984).

3. An agency unreasonably delays where it acts in bad faith by being utterly indifferent to a congressional deadline. *In re Barr Laboratories, Inc.,* 930 F.2d 72, 76 (D.C.Cir.1991).

4. A finding of unreasonable delay depends on an assessment of several factors,

---

**4.** The 1992 revision was submitted to EPA in February. Consequently, the current triennial cycle was February, 1995.

**5.** 1) Exclusion for mining related impoundments; 2) Failure to designate certain waterbodies for

fish consumption; 3) Narrative toxicity implementation procedures; 4) Narrative nutrient criteria implementation procedures; 5) Practical quantitation limits; and 6) Mercury criterion protective of wildlife.

including: 1) the length of time that has elapsed since the agency came under a duty to act; 2) the reasonableness of the delay in the context of the statute that authorizes the agency's action; 3) the consequences of the agency's delay; and 4) the agency's need to balance priorities in the face of limited resources. *In re Int'l Chem. Workers Union,* 958 F.2d 1144, 1149 (D.C.Cir.1992); *Oregon Natural Resources [Resource] Council v. Turner,* 863 F.Supp. 1277, 1283 (D.Or.1994); *Hells Canyon Preservation Council v. Richmond,* 841 F.Supp. 1039, 1044 (N.D.Cal.1993).

Defendants submit the appropriate test is the multi-factor test and this is the test utilized for purposes of this Opinion. If Plaintiffs prevail under it, they prevail under the others.

### 1. Time Which Has Elapsed Since EPA Came Under a Duty to Act

The EPA took final action when it issued disapprovals on September 9, 1993, and April 29, 1994. Subsequently, Arizona had 90 days to adopt the changes specified in EPA's disapprovals. EPA argues that its duty to act "promptly" arose upon the passing of this time, or on December 9, 1993, and July 29, 1994, respectively. Accordingly, EPA calculates a delay of approximately 19 months and 11 months, respectively. EPA argues that post-disapproval delays do not count, but successive delays are considered when assessing the reasonability of an agency's delay, especially to determine whether or not the statutory scheme has been undermined by the agency's conduct. *Cutler v. Hayes,* 818 F.2d 879, 898 (D.C.1987) (citing *see, e.g., In re Center for Auto Safety,* 793 F.2d 1346, 1354 n. 55 (D.C.Cir.1986) (repeated delays considered where statutory mandate involves annual rulemaking rather than single unitary rulemaking provision)).

### 2. Delay in the Context of the Statute

As set forth by Defendants, the standard is "whether the elapsed time 'would frustrate congressional intent by causing a breakdown of regulatory process.'" (Defendants' Reply

at 5 (citing *Cutler,* 818 F.2d at 899, n. 156.)) EPA focuses on legislative history of the CWA which discusses the ideal federal-state regulatory balance and suggests that the Agency should work closely with states to obtain approved standards before acting to promulgate water quality standards for state waters. H.R.Rep. No. 911, 92d Cong., 2d Sess. 105 (1972), *reprinted in,* 1 Cong.Res. Serv., 93d Cong., 1st Sess., *A Legislative History of the Water Pollution Control Act Amendments of 1972* at 753, 792.

EPA claims there is no breakdown in the regulatory process because Arizona is committed to proceed expeditiously to revise its standards. EPA intends to defer promulgation of water quality standards for Arizona as long as Arizona is so committed and argues this does not violate the statutory mandate that EPA act "promptly," nor violate the statutory process for three-year review and revision of state water quality standards.

The Court need not look any further than the facts of this case to rebut Defendants' assertions. *See* attached timeline. Arizona conducted a triennial review of its water quality standards in 1986. It failed to conduct the 1989 review. EPA took no action in response to Arizona's delay and argues that the statute does not mandate any specific duty for EPA to act in the face of a state's failure to promulgate water quality standards. *But see, Alaska Center for the Environment v. Reilly,* 762 F.Supp. 1422 (W.D.Wash.1991), (failure by Alaska over a 12–year period to submit standards to EPA amounted to constructive submission and triggered EPA's mandatory duty to promulgate standards), *affirmed* 20 F.3d 981 (9th Cir.1994). In 1992, when Arizona revised its water quality standards, EPA failed to timely carry out its mandatory duty to approve or disapprove the State's proposed standards. The disapprovals which should have been issued May 19, 1992 were delayed until September 9, 1993, and April 29, 1994, and only occurred as a result of this litigation. As previously noted, Arizona then had 90 days to revise its standards; thereafter, as of December 9, 1993, and July 29, 1994,[6] EPA has

---

6. If EPA had issued timely disapprovals, as man-

dated by 33 U.S.C. 1313(c)(3), Arizona's 90–day

been required by statute to "promptly" propose and promulgate water quality standards for Arizona. EPA submits that Arizona will promulgate its standards by the end of October 1996. (EPA's Reply to Court Inquiry on Remedy, filed September 25, 1995, at 2.)

Arizona conducted its 1992 revision at a six-year interval, and its recent revision is proceeding on a proposed four-year schedule. For those standards disapproved by the EPA in 1992, promulgation in 1996 of approved standards will have been delayed four years, skewing the CWA's provision for triennial revisions to seven years. As for the two 1992 disapprovals involving development of implementation procedures for the State's narrative standards for nutrients and toxicity, which were conditionally approved in 1986, these standards have been identified by the EPA as deficient for over ten years.

The Court is seriously concerned that promulgation under the EPA's proposed plan entirely hinges on the State. Arizona has informally submitted its current triennial proposals pertaining to the September 9, 1993, and April 29, 1994, disapprovals. On August 31, 1995, EPA noted with approval that Arizona had deleted the mining exemption and included fish consumption designations for all warm and cold waters in Arizona, but the EPA expressed the following reservations:

1. Arizona's standards continue to omit fish consumption (FC) use designations for effluent dominated waters. EPA intends to hear public comment regarding absence of FC use for these waters.

2. Arizona continues to have no implementation procedures for narrative nutrient standards. May 18, 1995, Arizona reported such procedures were being developed, but as yet has not submitted anything for review.

3. Arizona continues to have no implementation procedures for narrative toxicity standards. May 18, 1995, Arizona reported such procedures were being developed, but as yet has not submitted anything for review.

4. Although Arizona has deleted practical quantitation levels (PQLs) from its standards, the PQL revisions should be tied to improvements in laboratory detection methods and not the State's triennial review process.

5. Arizona's proposed standards do not address the lack of a mercury criterion. The EPA, in conjunction with ADEQ and other governmental agencies, is developing a tissue residue monitoring approach to address mercury contamination. EPA will modify its mercury disapproval upon the Fish and Wildlife Service's (USF & WS) approval of the approach. Arizona must, but as has not, submitted a work plan for USF & WS's approval.

(EPA's Reply filed September 6, 1995 at Exhibit B.)

Furthermore, Arizona's revision must still go through the State's rulemaking process which requires public comment, evaluation of comments by ADEQ, and approval and adoption of the revision by ADEQ's director. Thereafter, the revisions must be submitted to the Governor's Regulatory Review Council (GRRC) which has the power to overturn ADEQ's director's adoption of the standards. Plaintiffs submit that the Governor and legislature, both vocal and repeated critics of federal environmental laws, might well refuse to make the required revisions, especially since the standards affect mining and other economic interests in Arizona.

In the event the State fails to make the required changes by the end of October, 1996, EPA estimates it could propose standards within 90 days, or by the end of January, 1997. The EPA argues that the Court lacks jurisdiction at this time to impose a deadline for final promulgation of the water quality standards, which pursuant to 33 U.S.C. § 1313(c)(4), is 90 days from the date it issues the proposed standards, or the end of April, 1997.[7]

---

revision period would have commenced on May 19, 1992, and EPA's duty to propose water quality standards would have arisen on August 19, 1992.

7. This Court is not inclined to dissect its jurisdiction by the various subsections of 33 U.S.C. 1313(c), under which the EPA's duty to propose and promulgate quality standards resides. At

Alternatively, if EPA acts independent of the State's triennial revision, EPA assesses the following steps would be necessary before it could propose water quality standards for Arizona: 1) perform an issue/impact study, including cost analysis; 2) allow for public comment; 3) draft proposed rule and preamble to Federal Register; 4) administrative review, including signature of Administrator. EPA estimates steps one through three would take approximately five months, two months for public comment. Administrative review would consume another five months, or to the end of August, 1996.[8]

Plaintiffs challenge the necessity for the public comment period by noting that the Administrative Procedure Act (APA) only requires a 30–day public comment period *after* the formal proposal of the water quality standards. 5 U.S.C. § 553(c) & (d) (emphasis added). Executive Order No. 12866, invoked by Defendants in support of their ten-month schedule, recommends "not less than 60 days" for public comment on a *proposed* rulemaking. Exec.Order No. 12866 § 6(a)(1) (September 30, 1993), 58 C.F.R. 51735 (emphasis added). Both of these provisions provide for public comment post-publication, or post-proposal, of the rulemaking. There is no requirement that an agency solicit public comment or input prior to publication of a proposed rule in the Federal Register. Ideally, such input is advisable:

> Each agency shall ... provide the public with meaningful participation in the regulatory process. In particular, before issuing a notice of proposed rulemaking, each agency should, *where appropriate*, seek the involvement of those who are intended to benefit from and those expected to be burdened by any regulation (including, specifically, State, local, and tribal offi-

cials).... Each agency also is directed to explore and, *where appropriate*, use consensual mechanisms for developing regulations, including negotiated rulemaking.

*Id.* (emphasis added). Additionally, there are circumstances which warrant curtailing administrative review:

> In emergency situations or when an agency is obligated by law to act more quickly than normal review procedures allow, the agency shall notify OIRA as soon as possible and, to the extent practicable, comply with subsections (a)(3)(B) and (C)[9] of this section. For those regulatory actions that are governed by a statutory or court-imposed deadline, the agency shall, to the extent practicable, schedule rulemaking proceeding so as to permit sufficient time for OIRA to conduct its review, as set forth below in subsection (b)(2) through (4)[10] of this section.

*Id.* at subsection (a)(3)(D). The subsections referenced above are those on which the EPA bases its estimated five-month administrative review period. (EPA's Response to Court Request for Schedule, Declaration of Robert Perciasepe at ¶ 12.)

Here, the EPA schedule appears needlessly protracted; full OIRA review only applies for significant regulatory actions, *Id.* at (a)(3)(A), described by the EPA as those actions having an annual effect on the economy of $100 million or more. *Id.*, at § 3(f). Perciasepe does not anticipate this to be such a rulemaking. (EPA's Response to Court Request for Schedule, Declaration of Robert Perciasepe at ¶ 9.)

Scrutiny of both of EPA's proposed schedules reveals that the bulk of time is consumed by public comment and administrative review. Assuming the worst case scenario,

---

this time, Plaintiffs' action is properly framed as an unreasonable delay claim under the APA. In the event, the EPA violates any date certain deadline set forth in the statute, Plaintiffs' claim becomes actionable under the citizen suit provisions of the CWA. *See* 33 U.S.C. § 1313(e) (citizen suit provisions are supplemental, not limiting, to other remedies).

8. This time schedule presumed a November 1, 1995 start-up date.

9. Significant regulatory actions require submission to the OIRA of the draft proposal and a cost benefit analysis. Exec. Order No. 12866 § 6(a)(3)(B), (C).

10. The OIRA shall waive review or notify the agency in writing of the results of the review within 10 days for advance notices of proposed rulemaking, or other preliminary regulatory actions prior to a Notice of Proposed Rulemaking; all other regulatory actions must be acted on within 90 calendar days. *Id.* at (b)(2)–(4).

that Arizona's rulemaking fails, neither of these time factors will have been shortened or eliminated. For example, EPA reports that it is able to review any technical work completed by the State, (EPA's Reply to Court Inquiry on Remedy at 4), but does not suggest that any of the State's public comment or input procedures could serve the purposes of the EPA. Defendants argue that "if EPA were required to conduct a rulemaking while the State's rulemaking was ongoing, the public would incur the burden of having to participate in two distinct proceedings with two different agencies regarding the identical subject matter in order to protect their interests." (EPA's Reply to Court Inquiry on Remedy at 3.)

Unfortunately, this appears to be the only way to ensure that water quality standards are "promptly" set for Arizona. Furthermore, this Court is not persuaded that the two rulemakings need be overly burdensome. The EPA does not contend that the rulemakings at issue are particularly complex and admits that it can utilize much of the technical data developed by Arizona. The Court believes that the EPA can continue to work closely with the State and coordinate the two rulemakings by using, "where appropriate, [ ] consensual mechanisms for developing regulations, including negotiated rulemaking." Exec.Order No. 12866 § 6(a)(1). According to Defendants, Arizona has been actively pursuing the revisions at issue in this lawsuit by holding public meetings, receiving public comments, etc. (EPA's Memorandum Supporting Second Cross–Motion for Summary Judgment at 12.) The State anticipates publishing proposed revisions to the water quality standards in December, 1995. *Id.* There is nothing in this Court's Order which prevents EPA, if satisfied with Arizona's developments, from adopting these proposed standards for its own purposes.

### 3. Consequences of EPA's Delay

Plaintiffs contend the consequences of EPA's continued delay are extreme because Arizona's waters are "left without the level of pollution control necessary to protect human health, fish, and wildlife." (Plaintiffs' Second Motion for Summary Judgment at 12.) Pro-

fessor Wendell Minckley of Arizona State University, allegedly a leading authority on Arizona fishes and fish habitat, attests that many of Arizona's aquatic ecosystems are near collapse due to degradation from human activities, including water pollution. (Plaintiffs' Reply at 15, Exhibit 2 at Declar. ¶¶ 5–7.) Specifically, he attests that ADEQ must act without delay to "establish stricter nutrient limits in a number of waters and specific procedures to protect aquatic life from combined effects of multiple toxic pollutants acting together." *Id.*

Defendants accuse Plaintiffs of making spurious charges. Defendants contend there are no serious consequences associated with their delays because EPA can provide interim protection through its permit process. (*See* Defendants' Cross-motion for Summary Judgment at 20–22; Marcus Declar. at ¶¶ 21–29.) Essentially, EPA proposes to enforce proper standards by:

1. Off-setting the absence of implementation procedures by using its own implementation guidance standards when issuing National Pollutant Discharge Elimination System (NPDES) permits.

2. Countering Arizona's lack of fish consumption use designations for certain waterbodies by writing permits that will protect fishing where that is an existing use of the waterbody.

3. Presence of practical quantitation levels (PQLs) in State standards does not impair EPA's ability to write permits meeting the CWA's requirements. EPA submits the current PQLs in Arizona's standards are environmentally sound and that it only challenged the adoption of them in regulatory form because as the PQLs become obsolete, time-consuming rulemaking changes are necessary.

4. EPA's permit and inspection activities can ensure that the mining exclusion does not cause any significant adverse environmental consequences.

5. The State's adoption of mercury criteria during this triennial review/revision was precisely the remedial activity required by the EPA in its 1992 disapproval of this standard.

In spite of these assurances, Defendants' ability to protect Arizona's waters is questionable in light of Arizona's 1994 Water Quality Assessment report, prepared pursuant to section 305(b) of the CWA. The report cites numerous instances of severe environmental impacts from water contamination, including: fish kills, fish and wildlife contamination, sediment contamination, and spread of waterborne disease. (Plaintiffs' Reply, Exhibit 3 at 65–70.) The report identifies high levels of toxins and nutrients as among the causes for these occurrences. The report lists a number of Arizona's lakes, including Mormon Lake, Lake Mary, Rainbow Lake, Black Canyon Lake, and Alamo Lake which have become eutrophic due to toxic and nutrient contaminants such as those originating from mining operations. *Id.* at 83, 98, 111, 112, 116, 178.

### 4. Agency's Need to Balance Priorities

The EPA contends that the Water Management Division in Region 9 is currently involved in a great many important activities carrying out its numerous statutory duties, especially the development of toxic water quality criteria for California. EPA commenced the activity on behalf of California after a state court invalidated California's promulgation of its criteria as arbitrary and capricious. EPA has about half of its Region 9 staff working on the California project which it deems a high priority in light of the void created by the state court's action.

■ Where Congress does not establish a timetable for agency action, broad discretion exists for an agency to set its own agenda, establish its own priorities, and distribute its resources on tasks it deems most pressing. *Cutler v. Hayes,* 818 F.2d 879, 896 (D.C.Cir. 1987). In such a circumstance, a court must grant substantial deference to the choices of an agency for completing administrative proceedings. *Sierra Club v. Thomas,* 828 F.2d 783, 797 (D.C.Cir.1987). EPA submits its timetable for securing approved water quality standards in Arizona deserves broad discretion. EPA contends that its delay, assessed within the context of its limited resources, the greater environmental significance of its other projects, and the lack of

immediate risk or harm to human health or the aquatic environment in Arizona, is reasonable.

■ Defendants' argument of discretion goes too far. The statutory provision that the EPA act "promptly" cannot be compared to statutes where the legislature is silent regarding designation of any timeframe for agency action or uses wholly discretionary language such as "from time to time." *See NRDC v. Thomas,* 885 F.2d 1067, 1075 (2nd Cir.1989) (provision that the Administrator revise a list of air pollutants "from time to time" is discretionary). The legislature specified that the EPA act "promptly" and set this mandate within the context of the overall timeliness requirements of section 303(c) of the CWA, 33 U.S.C. 1313(c).

■ Obviously, the timeliness standards of 33 U.S.C. 1313(c) must be met within the confines of the CWA's requirement for triennial review and, if necessary, revision of a state's water quality standards. Section 1313(c) provides 60 days for the EPA to approve a state's proposed standards, 33 U.S.C. 1313(c)(3); 90 days for EPA to disapprove a state's proposed standards, *Id.;* 90 days for a state to make necessary changes. *Id.* Where a state fails to take the required remedial action, the EPA must promptly propose water quality standards, *Id.* at (4); and promulgate the standards no later than 90 days from the date of publication of the proposed standards. *Id.* As applied here, "promptly" wholly undermines the CWA's triennial review process and completely nullifies the requisite short time frames of § 1313(c). If, as the EPA argues, the statutory timelines are unrealistic, or counterproductive to public policies for state and federal cooperation, the EPA must look to Congress for relief.

Just as the legislature did, this Court declines to specify an exact time limit to define EPA's duty to act "promptly," but finds that the EPA has unreasonably delayed proposal and promulgation of Arizona's water quality standards. This Court has jurisdiction to craft an equitable remedy. *Alaska Center for the Environment v. Browner,* 20 F.3d 981, 986–87 (9th Cir.1994). Accordingly,

**IT IS ORDERED** that Plaintiffs' Second Motion for Summary Judgment is GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Second Cross-motion for Summary Judgment is DENIED.

**IT IS FURTHER ORDERED** that Defendants shall have 90 days from the date of this Order to prepare and publish proposed regulations setting forth a revised or new water quality standard for those standards disapproved on September 9, 1993, and April 29, 1994.

**IT IS FURTHER ORDERED** that Defendants shall promulgate the revised or new standards not later than 90 days after the Administrator publishes such proposed standards, unless prior to such promulgation, Arizona has adopted revised or new water quality standards for the disapprovals, which the Administrator determines to be in accordance with the CWA.

**IT IS FURTHER ORDERED** that the Clerk of this Court shall enter judgment in this matter for the Plaintiffs and against the Defendants.

### ORDER

█ Defendants seek reconsideration of this Court's Order filed November 2, 1995 and Judgment entered that same day. Motions to reconsider are appropriate only in rare circumstances:

> The motion to reconsider would be appropriate where, for example, the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983); *see also Sullivan v. Faras–RLS Group, Ltd.,* 795 F.Supp. 305, 308–09 (D.Ariz.1992).

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986).

A motion for reconsideration should not be used to ask a court "to rethink what the court had already thought through—rightly or wrongly". *Above the Belt, Inc.,* 99 F.R.D. at 101; *See Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6, 7 (N.D.Ill. 1983). Arguments that a court was in error on the issues it considered should be directed to the court of appeals. *Id.* at 7.

Defendants' Motion to Reconsider neither discloses any new facts, nor reveals any manifest error of law. The facts and circumstances which caused this Court to rule against Defendants have not changed.

April 20, 1993, when Plaintiffs filed this action, the EPA had failed to act to approve or disapprove certain water quality standards for the State of Arizona. The EPA was in clear violation of a nondiscretionary duty to issue approvals or disapprovals in accordance with specific time limits established by the Clean Water Act (CWA). *See* 33 U.S.C. § 1313(c)(3) (EPA has 60 days from date of state's submission of water quality standards to approve and 90 days to disapprove). Therefore, the EPA properly brought this action under the citizen suit provisions of the CWA. *See* 33 U.S.C. 1365(a) (citizen suits may be filed against Administrator for her failure to perform an act or duty under the CWA which is not discretionary). Plaintiffs' Complaint included the charge that the Administrator's violation of her nondiscretionary duty to timely issue approvals or disapprovals had illegally delayed performance of EPA's duty to promptly promulgate substitute standards for Arizona. (Complaint at ¶ 18.)

Within the first year of litigation, the parties negotiated a partial settlement; EPA agreed to issue disapprovals on September 9, 1993 and April 29, 1994, and Plaintiffs agreed to dismiss their claim that EPA had failed to issue approvals or disapprovals. Thereafter, Plaintiffs continued to urge their action under the citizen suit provision of the CWA and

argued that EPA stood in violation of a nondiscretionary duty by failing to "promptly" propose and promulgate water quality standards for Arizona. *See* 33 U.S.C. 1313(c)(4) (in the event a state fails to make requisite changes, the Administrator shall promptly prepare and publish proposed regulations ... The Administer shall promulgate standards not later than ninety days after he publishes such proposed standards). This was the stature of the case when this Court considered the parties' cross-motions for summary judgment, filed August 12, 1994 and August 22, 1994, respectively.

The Court rejected Plaintiffs' assertion and held that "promptly" is not a nondiscretionary duty of the type to be remedied under the CWA's citizen suit provision which serves as an enforcement mechanism for date-certain type violations. (Order filed May 1, 1995.) This Court granted Plaintiffs leave to file an Amended Complaint to add an unreasonable delay claim under the Administrative Procedures Act (APA).[1] Subsequently, after considering the parties' second set of cross-motions, this Court granted summary judgment for Plaintiffs and ordered the EPA to propose and promulgate water quality standards for Arizona by certain dates.

Defendants ask this Court to reconsider its judgment. Defendants concede to this Court's jurisdiction to order proposal of water quality standards for Arizona, but challenge this Court's Order that EPA must promulgate the standards. EPA also argues that its duty to propose and promulgate standards should not be tied to publication in the federal register. EPA asks that its duties be complete with the Administrator's signing the notice of proposed rulemaking and notice of final regulation.

Defendants do not challenge this Court's jurisdiction over citizen suit cases brought under the CWA nor unreasonable delay cases brought under the APA.[2] Most accurately described, Defendants' argument is that this Court exceeded its remedial powers when it ordered action beyond the proposing of water quality standards, and addressed EPA's failure to timely promulgate the standards for Arizona.

Defendants made this same argument in its second motion for summary judgment, which the Court seriously considered when it fashioned the remedy ordered on November 2, 1995. The violation at issue before this Court is the EPA's failure to act in compliance with the CWA to timely propose and promulgate water quality standards for Arizona after the state failed to establish adequate standards in 1992.

■ This Court's ruling is well within the confines of *Alaska Center for the Environment v. Browner,* 20 F.3d 981 (9th Cir.1994). The statute mandates that EPA's duty to propose and promulgate water quality for a state must be carried out within the short time tables specified in 33 U.S.C. § 1313(c)(2)–(4). To construe the mandates piecemeal for purposes of granting relief, as urged by Defendants, would render the statute wholly ineffective. There is a strong presumption against such construction. *Id.* at 984.

Furthermore, this Court properly considered past violations which, in this Court's opinion, amount to a pattern of violations indicating a strong likelihood of future violations. *Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 564 (9th Cir.1990). This Court fairly anticipates, that unless enjoined, the EPA will continue its dilatory conduct and promulgation of Arizona's water quality standards will not be forthcoming. Under such circumstances, this Court has broad power to fashion an equitable remedy which will deter these future misdeeds. *Id.* at 564.

The Court has been conscientious in forming its relief so as not to invade EPA's discretionary realm to determine the substance and manner by which to fashion water quality standards for Arizona. In short, this

---

1. Plaintiffs did not drop their claim under 1365(a), the citizen suit provision of the CWA.

2. All parties agree that jurisdiction resides in the district courts over actions brought pursuant to the citizen suit provision of the CWA, and over unreasonable delay cases brought pursuant to the APA. *See, Oregon Natural Resources Council v. U.S. Forest Service,* 834 F.2d 842, 850–52, n. 15, n. 16 (9th Cir.1987) (judicial review in district court available under the APA).

Court is concerned only that the job gets done.

Furthermore, the Order filed by this Court on November 2, 1995, replicates the mandates of the statute. 33 U.S.C. § 1313(c)(4). Defendants are placed in no greater jeopardy to complete proposal and promulgation of water quality standards for Arizona by this Court's Order than when its duty to act existed solely under the statute. This Court exacts no more than the statute exacts. Perhaps, if the case law is as Defendants suggest, it can find relief there. *See* Defendants' Reply at n. 4.[3] If not, Defendants must seek relief from Congress and not this Court.

This Court affirms its Order of November 2, 1995, in all parts.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Reconsideration is DENIED.

## ATTACHMENT

*Chronology of Relevant Events: Timeline*

February 19, 1992: Arizona submitted proposed standards to EPA. (EPA has 60 days to approve, 90 to disapprove and give notice of necessary changes)

March, April, and July of 1992: EPA approved certain standards.

May 19, 1992: 90 days expires for EPA disapprovals and to give notice of changes.

August 19, 1992: * Date by which State would of had to make changes if EPA had complied with mandatory deadline of May 19, 1992 to issue disapprovals. Date after which EPA's duty to promptly propose and promulgate standards should have arisen, but for EPA's failure to comply with mandatory deadlines for issuing disapprovals.

April 20, 1993: Defenders filed Complaint.

September 9, 1993: EPA disapproved certain standards and noticed necessary

changes. (Arizona has 90 days to make changes)

December 9, 1993: * Arizona's 90 days expire and EPA's duty to promptly propose and promulgate standards arises as to September 9, 1993, disapprovals.

April 29, 1994: EPA disapproved remaining standards and noticed necessary changes. (Arizona has 90 days to make changes)

July 29, 1994: * Arizona's 90 days expires and EPA's duty to promptly propose and promulgate standards arises as to April 29, 1994, disapprovals.

*October 31, 1996:* Proposed date for Arizona's final promulgation of its water quality standards, including the remedial changes required by EPA for its disapprovals of September 9, 1993, and April 29, 1994.

*November 30, 1996:* EPA's proposed date for promulgation of water quality standards, if it commences an independent rulemaking.

*January 31, 1997:* EPA's proposed date for promulgation of water quality standards, if EPA acts subsequent to Arizona's rulemaking.

---

**3.** *This is not an issue before this Court.*