UNITED STATES TO THE USE OF NOLAND COM-
PANY, INC. *v.* IRWIN ET AL., TRADING AS IRWIN
& LEIGHTON, ET AL.

No. 658.   Argued March 11, 1942.—Decided April 6, 1942.

*Mr. Alexander M. Heron,* with whom *Mr. Bynum E.
Hinton* was on the brief, for petitioner.

*Mr. Prentice E. Edrington,* with whom *Mr. A. M. Hol-
combe* was on the brief, for respondents.

24

Mr. Justice Byrnes delivered the opinion of the Court.

By Act of February 14, 1931,[1] making appropriations for the Department of the Interior, Congress authorized the construction of a library building at Howard University in the District of Columbia. The cost was not to exceed $800,000, of which sum $400,000 was made immediately available. Only a small part of this money had been used for architects' fees when the President, shortly after his inauguration in 1933, ordered impounded these and all other funds appropriated for construction.

Title II of the National Industrial Recovery Act of June 16, 1933,[2] created a Federal Emergency Administration of Public Works, with all of its powers vested in an Administrator. By § 202 the Administrator was directed to "prepare a comprehensive program of public works, which shall include among other things the following: . . . (c) any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public; . . ." And § 203 provided that "with a view to increasing employment quickly . . . the President is authorized and empowered through the Administrator or through such other agencies as he may designate or create, (1) to construct, finance, or aid in the construction or financing of any public works project included in the program prepared pursuant to § 202; . . ."

On August 24, 1935, Congress passed the Miller Act.[3] By the terms of this statute, "before any contract, ex-

[1] 46 Stat. 1115, 1160.
[2] 48 Stat. 195, 201.
[3] 49 Stat. 793; U. S. C., Title 40, §§ 270 a-d:

"Sec. 1 (a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become

ceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States . . . a payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person." The Act also permitted persons who supplied materials and labor to bring suit on the bond in the name of the United States.

binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000, the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.

"(b) The contracting officer in respect of any contract is authorized to waive the requirement of a performance bond and payment bond for so much of the work under such contract as is to be performed in a foreign country if he finds that it is impracticable for the contractor to furnish such bonds.

"(c) Nothing in this section shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases·specified in subsection (a) of this section.

"Sec. 2 (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of

These are the statutes applicable to this dispute.

After the passage of the National Industrial Recovery Act, the Secretary of the Interior (who had been named Administrator pursuant to Title II) approved the library building at Howard University as a part of the public works program and allotted $1,120,811.58 for its construction. On December 5, 1936, the Assistant Secretary of the Interior, on behalf of the United States, entered

which a payment bond is furnished under this Act and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

"(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract. The United States shall not be liable for the payment of any costs or expenses of any such suit."

into a contract with respondent, Irwin & Leighton, for the construction of the library building. As a condition of the contract, Irwin & Leighton was required to furnish a bond to secure the laborers and materialmen, under provisions of the Miller Act.[4] Accordingly, it posted such a bond in the amount of $408,618, with respondent United States Guarantee Company as surety.

Petitioner furnished to a sub-contractor materials worth $23,649.35. Of this sum it was paid $11,146.80, leaving due $12,502.55 with interest. When payment of this amount was refused, petitioner brought this suit on the bond in the name of the United States. Respondents moved to dismiss the complaint on the ground that the construction of the library building at Howard University was not a "public work," within the meaning of the Miller Act. The District Court overruled the motion to dismiss. The Court of Appeals allowed a special appeal and reversed, 122 F. 2d 73, on the authority of its own earlier decision in *Maiatico Construction Co.* v. *United States,* 65 App. D. C. 62, 79 F. 2d 418. The case is here on certiorari.

The question before us therefore is whether the construction of the library was a "public work" as that term is used in the Miller Act. We think that it is, that the Assistant Secretary of the Interior was consequently authorized to require respondents to post a bond securing materialmen, and that petitioner is entitled to sue on the bond in the name of the United States.

---

[4] Bulletin No. 51 of Federal Emergency Administration of Public Works, "Information Relating to the Negotiation and Administration of Contracts for Federal Projects under Title II of the National Industrial Recovery Act" (Revised, Oct. 1, 1935). Part I, § 2 (a): "The forms required for general use in connection with construction and repair projects are as follows: . . . U. S. Government Standard Form of Payment Bond No. 25A for the protection of labor and materialmen, pursuant to Public Act No. 321, Seventy-fourth Congress, approved August 24, 1935 [The Miller Act]."

No aid in ascertaining the meaning of "public works" is to be found in the Miller Act itself. But in the National Industrial Recovery Act, passed two years before the Miller Act, Congress defined it as including "any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public." The library at Howard University was not only a project *of the character* heretofore constructed or carried on . . . with public aid"; it had been directly and specifically authorized by Congress in 1931 and money had actually been appropriated for it. And it requires no discussion that Howard University, established by the authority of Congress "for the education of youth in the liberal arts and sciences," [5] serves "the interests of the general public."

In *Maiatico Construction Co.* v. *United States, supra,* upon which the Court of Appeals principally relied in reaching an opposite conclusion, the same court had construed a different statute, the Heard Act of August 13, 1894.[6] That Act required that "any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required" to post a bond for the security of both the United States and the suppliers of labor and materials. It permitted the laborers and materialmen to enforce their claims by intervening in any suit by the United States on the bond. The plaintiffs in the *Maiatico* case supplied labor and materials in the construction of three dormitory buildings at Howard University, the contract for which had been let to the defendant construction company by the United States in Novem-

---

[5] 14 Stat. 438.

[6] 28 Stat. 278, as amended by the Act of Feb. 24, 1905, 33 Stat. 811 and the Act of March 3, 1911, 36 Stat. 1167.

ber, 1930. The Court of Appeals decided that the plaintiffs could not recover on the defendant's bond because the dormitories were not "public buildings" and their construction was not a "public work." It based this conclusion on the theory that "public buildings" or "public works," within the meaning of the Heard Act, included only buildings which belonged to the United States. Since Howard University is a private institution and since it held title to the dormitories, recovery on the bond was denied to the suppliers of materials and labor.[7]

Whatever may have been the validity of this narrow formula when applied to the Heard Act, we cannot approve its application to this suit under the Miller Act. In the first place, the whole concept of "public works" has been considerably altered since the enactment of the Heard Act in 1894, and particularly within the last dozen years, and the question of title to the buildings or improvements or to the land on which they are situated is no longer of primary significance.[8] But we are not left to such vague guidance. Two and a half years after the execution of the contract involved in the *Maiatico* case, Congress, in the National Industrial Recovery Act, specifically defined "public works" as including "any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public." The Miller Act was passed two years later for the purpose of enlarging the protection which the Heard Act had afforded to laborers and materialmen by facilitating the procedure for enforcing their claims against the contractor. During the hearings on the several bills from which the Miller Act evolved, Congressman Duffy,

---

[7] This emphasis upon title to the building or project or to the land on which it is situated finds support, as far as the Heard Act is concerned, in *Title Guaranty & Trust Co.* v. *Crane Co.*, 219 U. S. 24; 23 Op. Atty. Gen. 174.

[8] See *Peterson* v. *United States*, 119 F. 2d 145, at 147–148.

of Ohio, the author of one of the bills and a member of the sub-committee that drafted the Act, declared without dissent by any Representative: "If this bill were passed by this Congress it would certainly be applicable to the public works program and that is the reason for its importance." [9]

We have no doubt that the Miller Act was intended to apply to the "public works" authorized by the Administrator under the National Industrial Recovery Act. The National Industrial Recovery Act did not leave to speculation the nature of the "public works" that Congress envisaged. Its language was not technical, but plain and specific. Expressly included were "projects of the character heretofore constructed or carried on . . . with public aid to serve the interests of the general public." Beyond question the library at Howard University was such a project.

The respondents evidently had no difficulty interpreting the language of the Recovery Act or the Miller Act until they were called upon to meet the claims of petitioner. The record does not reveal that Irwin & Leighton objected to posting the bond when the contract was executed. It paid a premium of $8,172.25 for the bond, and the surety company accepted it without question. Presumably, these are the circumstances which caused the Court of Appeals to remark upon "the strong equities" of petitioner's case.

We hold that the Administrator had the authority to require the bond, and that petitioner was entitled to bring this action on it. Holding this view, we find it unnecessary to consider the other questions raised by petitioner.

*Reversed.*

[9] Hearings on H. R. 2068, H. R. 4027, H. R. 4231, H. R. 4461, H. R. 5054, H. R. 6018, H. R. 6115, H. R. 6677, H. R. 8519 (March 8, 22, April 26, and May 3, 1935), Committee on the Judiciary, House of Representatives, 74th Cong., 1st Sess., p. 71.