JACINTO CASABLANCA, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, WILFRIDO ROBERTS, JUDGE, Respondent; CONTINENTAL CASUALTY COMPANY, Intervener.

No. O-70-96.     Decided November 3, 1971.

202

*Ramón Lloveras Otero* for petitioner. *González & Rodríguez* for intervener.

MR. JUSTICE MARTÍN delivered the opinion of the Court.

The United States Nuclear Energy Commission entered into a contract with Southern Construction Co., Inc., for the construction of the nuclear center in Mayagüez. The Southern Construction Co., a construction company, and the Continental Casualty Co., surety company, as principal and surety respectively, furnished a bond to secure the payment of the materials and labor which would be used in the execution of said project. The bond was furnished pursuant to the requirements of the federal statute known as the Miller Act, 49 Stat. 793, of August 24, 1935 (40 U.S.C. § 270 (a) *et seq.*). In the execution of the said contract, Southern Construction Company entered into a subcontract with Jacinto Casablanca, petitioner herein, for part of the works.

On April 5, 1960, Jacinto Casablanca brought an action in the Superior Court of San Juan claiming from Southern Construction Company the payment of certain amounts owed to him under said subcontract and an amount for damages allegedly caused by said defendant in failing to perform certain conditions of the subcontract. On July 5, 1960, defendant answered the complaint. By the end of that same year, plaintiff's attorneys started to investigate as to whether the Southern Construction had furnished any bond for the project. To that effect they requested from the Commissioner of Insurance of Puerto Rico a copy of the bond furnished by Continental Casualty for said project. The Commissioner informed them that the agents of said surety company alleged that they had not furnished any bond whatsoever in relation with said project. Later on, in 1963, the Continental

Casualty's attorneys informed plaintiff that the main office of the company had no proof showing that any policy whatsoever had been issued in favor of the Southern Construction.

At this point on November 1, 1966, the hearing of the case on its merits was held, to which hearing only plaintiff appeared and presented his evidence. On January 27, 1967, the court entered judgment ordering Southern Construction Co. to pay to plaintiff $57,099.89 for damages, $12,053.25 for unpaid obligations, and legal interest on said last sum as of January 27, 1960, plus $500 for attorney's fees.

On August 16, 1968, the United States Atomic Energy Commission sent to plaintiff's new attorneys copy of the payment bond issued by the Continental Casualty Company on June 27, 1958, which covered the construction contract involved in this case.

On September 20, 1968, twenty months after judgment was rendered against the Southern Construction Co., plaintiff, seeking the execution of said judgment against the surety company, filed a petition before the trial court, which he entitled "Proceeding Against Solidary Debtor," requesting that order be entered summoning the Continental Casualty to show cause why it should not be bound by said judgment. The Continental Casualty having been summoned, the hearing of the case was held on October 18, 1968. On March 31, 1970, the trial court finally decided that since the bond was furnished under a contract with the Government of the United States, the same was subject to the statute known as the Miller Act, which provides that every suit or claim under such contracts shall be brought in the United States District Court for the district in which the contract was to be performed and executed. The trial court concluded that the jurisdiction of the federal courts is exclusive for such claims and, consequently, declared itself without jurisdiction as to the surety company, Continental Casualty. Petitioner appeals from said decision before us.

In his brief petitioner mainly raises two questions, to wit: (1) that the Miller Act is not applicable to his claim, and, consequently, it is not of the exclusive jurisdiction of the federal forum; and (2) that if it were applicable, the actions of the Continental Casualty itself preclude the latter from relying on the provisions of the federal statute.

■ The Miller Act, 40 U.S.C. § 270 (a) *et seq.*, is a statute of general character which requires the furnishing of bonds for any contract for the construction, repair, or alteration of any federal building or public work.[1] *Tropicair Mfg. Corp.* v. *The Coite Somers Co.*, 96 P.R.R. 140 (1968) ; Byrne and Costello, *The Evolution of Coverage under the Miller Act*, 28 Fordham L. Rev. 287 (1959) ; Stickells, *Bonds of Contractors on Federal Public Works—The Miller Act*, 36 B.U.L. Rev. 499 (1956). Said act requires that the contractor of a federal work furnish two kinds of bonds. One in favor of the Government of the United States, to secure the termination of the work according to the agreement (Performance Bond), and another in favor of the government also, but whose purpose is the protection of all the persons supplying labor and materials in the execution of the contract (Payment Bond).

■ The bond in the case at bar was furnished pursuant to the provisions of § 270 (a) of the Miller Act. The form of the bond document used in this case was provided by the federal agency General Services Administration and the same expresses its purpose to protect the persons supplying labor and materials, pursuant to the provisions of the Miller Act. The penalty clause of the bond, as required by said federal Act, binds the principal and its surety in favor of the United

---

[1] Similar legislation was adopted in Puerto Rico in cases of state public works, Act No. 388 of May 9, 1951, 22 L.P.R.A. § 47 *et seq.* See, *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 P.R.R. 200 (1965); *Ferrer* v. *Alliance Company of P.R., Inc.*, 93 P.R.R. 1 (1966) ; *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 P.R.R. 719 (1964) ; *Cristy & Sánchez* v. *Commonwealth*, 84 P.R.R. 226 (1961) ; *Arzuaga & Santana, Inc.* v. *Ramos*, 100 P.R.R. 122 (1971).

States only. *United States* v. *Carter*, 353 U.S. 210, 77 S.Ct. 793 (1957); *United States* v. *Peerless Casualty Company*, 255 F.2d 137 (8th Cir. 1958); *United States* v. *Ft. George G. Meade, Etc.*, 186 F.Supp. 639 (1960). And, undoubtedly, the bond in this case covers a federal public work. See, *United States* v. *Irwin*, 316 U.S. 23 (1942), 62 S.Ct. 899; *Fidelity & Deposit Company of Maryland* v. *Harris*, 360 F.2d 402.

■ Petitioner actually argues that even in a case of a bond issued under the Miller Act, the courts of Puerto Rico have jurisdiction to entertain claims for bonds furnished under said Act. We do not agree.

Section 270(b) of the Miller Act expressly provides that every suit instituted under the same shall be brought in the name of the United States for the use of the person suing "in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy." This provision has been unanimously construed in the sense that the federal court has exclusive jurisdiction on the matter and the state courts cannot entertain such cases. *Blanchard* v. *Terry & Wright, Inc.*, 331 F.2d 467, *cert. denied*, 85 S.Ct. 62; *United States* v. *Aetna Casualty & Surety Company*, 297 F.2d 665 (1962); *Gifford-Wood Co.* v. *Travelers Indemnity Co.*, 249 N.Y.S.2d 317; *United States* v. *Sovereign Construction Co.*, 311 F.Supp. 371 (1970). The American Law Institute has proposed to continue the exclusive jurisdiction of the Miller Act cases.[2]

---

[2] The American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts 493–497, Washington, May 22, 1968. At p. 497 it concludes: " 'having in mind the legislative history; the policy and the purpose behind the Miller and the Capehart Acts; the variances in state law; the common characteristics of these construction projects; the fact that participants who join in them often come from various parts of the country; the realization that there is a need for a practicable and yet a fair and reasonable means of assembling in one forum all the interested parties who were ready enough initially to devote their constructional

■ In the case of *Tropicair Mfg. Corp.* v. *The Coite Somers Co.*, 96 P.R.R. 140 (1968), we considered this same problem. However, it dealt with a claim of a materialman against the contractor and its surety for materials supplied in the prosecution of a work under another federal statute known as the Capehart Act.[3] In the federal courts there exists an unreconcilable conflict as to whether the Miller Act applies to projects under the Capehart Act, mainly due to the fact that some courts have considered that the "Capehart" projects are not federal programs in the conventional sense.

In the *Tropicair* case, this Court, acknowledging that they were dealing with a problem of construction of a federal statute and in view of the conflict of construction existing in the federal jurisdictions, adopted the unanimous view of the state courts in deciding that the Miller Act was not applicable to the projects covered by the Capehart Act, for which reason the workers involved in said projects could resort to our state courts for the protection of their rights. In the case at bar, on the contrary, it is indubitable that a federal public work carried out through the Nuclear Energy Commission is involved, for which reason the provisions of the Miller Act are

---

abilities to a project in the local area; . . . and the awareness that delay and expense otherwise to be incurred by multiple litigation in geographically separated forums will thereby be avoided . . .', it is proposed in § 1311 (b) to continue exclusive jurisdiction of the Miller Act cases without regard to amount in controversy."

[3] The Capehart Act, 42 U.S.C. § 1594, 69 Stat. 651, authorizes the Secretary of Defense to enter into contracts for the construction of housing on lands owned or leased by the United States, *for the purpose of providing suitable living accommodations for military personnel*. In its pertinent part it provides that:

". . . Any such contract shall provide for the furnishing by the contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 270a of Title 40 [Miller Act], and no additional bonds shall be required under such section."

applicable. This being so, the Superior Court lacks jurisdiction to entertain the case at bar.

In support of his contention that the controlling law in the solution of this litigation is that of Puerto Rico, petitioner cites the cases of *Blair* v. *United States*, 147 F.2d 840, and *United States* v. *Trione*, 97 F.Supp. 522. Such cases are not applicable to the situation in the present case. Both are claims under the Miller Act in the federal courts. In none of them the jurisdictional question was raised.

What occurred in both cases was that the federal court applied provisions of state laws to questions on which the Miller Act is silent.

■ It is convenient to affirm that although the state courts have jurisdiction to entertain claims of a subcontractor against a contractor for nonperformance of the contract, or for the cost of labor and materials in projects covered by the Miller Act, they do not have jurisdiction against an insurer or surety, since in these cases the federal jurisdiction is exclusive. *American Creosote Works* v. *Caltoman Contractors*, 160 So.2d 310 (1964) ; *Voelz* v. *Milgram Contracting Co.*, 75 N.W.2d 305, 272 Wis. 366. Consequently, the judgment rendered against the contractor in the state court is not binding on the surety. *United States Fidelity & Guar. Co.* v. *Hendry Corporation*, 391 F.2d 13 (5th Cir. 1968).

Petitioner's second assignment assigns that the surety, Continental Casualty Co., is precluded from raising the defense of lack of jurisdiction of the court under the Miller Act, by reason that the latter sent information through its attorneys and the Commissioner of Insurance denying having issued any bond whatsoever for the contract object of the claim.

■ We cannot agree with petitioner, although we censure the manner in which the surety evaded giving the correct information concerning its contractual relationship with the

defendant construction company. We have held that not every conduct or action inconsistent with prior acts renders the doctrine of estoppel applicable; this doctrine is only applicable where a party, relying on the truth of the acts or statements of another, is *led* to act in such a way that if the doctrine were not applied he would be prejudiced. *Centro de Dependientes* v. *Montalvo*, 72 P.R.R. 381 (1951); *Serra, Garabis & Co., Inc.* v. *Municipality*, 42 P.R.R. 452 (1931); see, *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 P.R.R. 498 (1946).

Petitioner had available the means to acquaint himself with the details of the payment bond, particularly if he addressed himself to the federal government agency in charge of the project. However, he was not sufficiently diligent in his inquiries.

■■ As a general rule, under proper factual circumstances, estoppel may be a defense in a case under the said Miller Act. *United States* v. *Fryd Construction Corp.*, 423 F.2d 980 (Fla. 1970); *Graybar Electric Co.* v. *John A. Volpe Construction Co.*, 387 F.2d 55 (1967). See also, *United States* v. *Greene Electrical Serv. of Long Island, Inc.*, 379 F.2d 207; *United States* v. *Glassman Construction Company*, 397 F.2d 8 (1968). However, we have not found any case under the Miller Act, where the doctrine of estoppel has been used to grant jurisdiction on the matter to a state court which otherwise does not have jurisdiction. The invariable rule established by the federal and state courts to the effect that where there is no jurisdiction on the matter it cannot be acquired via estoppel should be followed. *In Re Federal Facilities Realty Trust*, 227 F.2d 651; *Silvers* v. *Maryland Casualty Company*, 239 F.2d 865 (1956); *Mahoney* v. *Northwestern Bell Telephone Co.*, 377 F.2d 549 (1967); *Radio Corporation of America* v. *Philco Corporation*, 187 F.Supp. 940 (1960); *Gahn* v. *Gahn*, 116 A.2d 902 (1955); *In re Mize's Guardianship*, 142 P.2d 116; *Behee* v. *Beem*, 131 P.2d 675; *In Re Freshour's Estate*, 280 P.2d 642.

Since we have reached the conclusion that the state courts have no jurisdiction to entertain a claim under the Miller Act, we must affirm the order entered by the trial court on March 31, 1970.

Mr. Chief Justice Negrón Fernández did not participate in this opinion.