682 A.2d 1173

**ADVIN ELECTRIC, INC.**

v.

**RELIANCE SURETY COMPANY.**

**No. 1770, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Sept. 25, 1996.

Robert N. Stokes, Columbia, for appellant.

John B. Britton (James A. Hoffman, II, Neil H. MacBride and Verner, Liipfert, Bernhard, McPherson and Hand, Chartered, on the brief), Washinton, DC, for appellee.

Argued Before WILNER, C.J., and MURPHY and EYLER, JJ.

WILNER, Chief Judge.

Advin Electric, Inc., a subcontractor on a building project, filed suit in the Circuit Court for Montgomery County against Reliance Surety Company, the surety on a payment bond posted by the general contractor, seeking money owing under its subcontract.

Reliance moved to dismiss the action on the ground that the job, and thus the claim, was subject to the Miller Act, 40 U.S.C. §§ 270a *et seq.* (1994), because the building project was a "public work of the United States." Enforcement actions under the Miller Act, it urged, were within the exclusive jurisdiction of the Federal District Courts, and the State court therefore had no subject matter jurisdiction. The court granted the motion and dismissed the action. We shall reverse.

### FACTS

On September 28, 1989, Tyler Construction Company entered into a contract with Senior Citizens Housing Development Corporation ("Owner"), a private, non-profit organization, to build Johnson Towers, an apartment building complex for elderly persons. The Owner financed the project through a loan made from the United States Department of Housing and Urban Development ("HUD").

The construction contract between Tyler and the Owner provided that: (1) HUD reserved the right to become the owner of the property in the event of a default by the Owner, (2) HUD had the exclusive right to interpret the principal contract and approve any changes, (3) Tyler warranted to HUD and the Owner that it would fully comply with all HUD regulations, (4) HUD retained the right of access to the construction site to inspect the progress of the work, (5) the contract date could be extended only with HUD's written approval, and (6) Tyler was required to obtain from all subcontractors agreements waiving their right to file or perfect any liens against the project.

In accordance with a HUD regulation, 24 C.F.R. § 885.415(n),[1] the construction contract also contained a provision requiring that "[t]he Contractor shall furnish to the Owner assurance of completion of the work in the form of a Performance/Payment Bond (HUD Form No. 2452–EH) in the amount of 100% of the Contract. Such assurance of completion shall run to the Owner and HUD as obligees." Tyler, as principal, and Reliance, as surety, executed and delivered to the Owner and HUD the "Performance–Payment Bond."

---

1. This regulation was issued by HUD pursuant to the National Housing Act of 1959, 12 U.S.C. § 1701q *et seq.*, and requires the issuance of a corporate surety bond for payment and performance. The purpose and policy of those HUD regulations in furtherance of the NHA is specifically to ensure that "[a] loan made under this part shall be used to finance the construction ... of projects for elderly ... families...." 24 C.F.R. § 885.1(b).

On November 9, 1989, Tyler entered into a subcontract with Advin for the performance of electrical work and wiring for the project. The subcontract incorporated by reference all terms of the principal contract "as if attached to this Agreement or repeated herein," which included the provision prohibiting Advin from perfecting a lien against the project. After completion of the subcontract work, a dispute arose between Advin and Tyler, which led to this action by Advin against Reliance.

## *DISCUSSION*

### (1) **The Miller Act**

The Miller Act, 40 U.S.C. §§ 270a (1994), requires that, before any contract exceeding $25,000 for the construction, alteration, or repair of "any public building or public work of the United States" is awarded, the contractor must furnish to the United States a performance bond for the protection of the United States and a payment bond for the protection of all persons supplying labor or material in the prosecution of the work.

We are concerned here only with the payment bond. The requirement in § 270a that such a bond be furnished is supplemented by the provisions of § 270b. Subject to the conditions stated therein, that section gives each person who has furnished labor or material in the prosecution of the work provided for in the contract and who has not been paid the right to sue on the payment bond. The suit must be brought in the name of the United States in the United States District Court. Unlike the case with certain other Federal statutes authorizing actions in the District Courts, Federal court jurisdiction under the Miller Act is exclusive. There is no concurrent jurisdiction in the State courts. *See United States ex rel. Owens–Corning Fiberglass Corp. v. Brandt Constr. Co.,* 826 F.2d 643, 645 (7th Cir.1987), *cert. denied,* 484 U.S. 1026, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988).

■ The payment bond requirement of the Miller Act was intended to provide an alternative remedy for subcontractors and suppliers working on Federal projects. The normal remedy available to such persons is to file a mechanic's lien against the property and, if not then paid, to have the property sold. That remedy is not available with respect to Federally owned property; the paramount sovereignty of the United States makes its property immune from liens created by State law. See *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161–62, 40 L.Ed.2d 703 (1974); *U.S. for Use of General Elec. Supply v. USF & G*, 11 F.3d 577, 580 (6th Cir.1993). Although the Act has been regarded as "highly remedial" in nature and therefore to be given a liberal construction "in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects," that salutary policy "does not justify ignoring plain words of limitation...." *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944).

### (2) Application

As noted, the payment bond provision of the Miller Act applies only to persons supplying labor or material in prosecuting a contract for the construction, alteration, or repair of a "public building or public work of the United States." The sole issue in this case is whether Johnson Towers is such a project.

The critical term is not defined in the Act; its scope has been delineated by case law. Although at one time it was argued that the Act applied only to a building or public work actually owned by the United States or one of its agencies, the Supreme Court made clear in *United States ex rel. Noland Co., Inc. v. Irwin*, 316 U.S. 23, 62 S.Ct. 899, 86 L.Ed. 1241 (1942), that that was not necessarily the case.

The precise scope of *Irwin* is in some dispute. The contract, for the construction of a library at Howard University, was financed as a public works project under the National

Industrial Recovery Act. The Government entered into the contract with the general contractor, who then subcontracted certain work. When an unpaid materialman sued on the payment bond required under the contract, the contractor and surety defended on the ground that, as the property was not owned by the United States, the project was not a "public work of the United States" and thus not subject to the Miller Act.

The Supreme Court observed that the Miller Act gave no aid in ascertaining the meaning of the term but that the National Industrial Recovery Act defined the term as including projects "carried on either directly by public authority or with public aid to serve the interests of the general public." *Id.* at 28, 62 S.Ct. at 901. The Court then held that the Miller Act was intended to apply to the "public works" authorized under the NIRA, and, as the project was a public work under that Act, it was as well under the Miller Act. Whether the Government held title to the land, it declared, was not the key.

Because the *Irwin* Court looked to the NIRA definition, which it held was included within the Miller Act definition, and did not purport to define the Miller Act term directly, the question has arisen whether the case should be extended beyond its precise holding, *i.e.*, whether a project not owned by the Government can be considered a "public building or public work of the United States" in the absence of a similar statute clearly making it so.

■ As noted in *U.S. for Use of General Elec. Supply v. USF & G, supra,* 11 F.3d 577 (hereafter *General Elec. Supply* ), the "garden variety" Miller Act case is one in which the Government both owns the land *and* contracts for the improvements. In that circumstance, there is usually no question but that the project is a public work of the United States. The issue becomes more tenuous where only one of these connections exists—where the Government owns the land but is not a contracting party or, as in *Irwin, vice versa.* Where, as here, the Government is neither an owner nor a contracting party, the law generally is that the project is not a public work

of the United States, at least absent some compelling special circumstance.

To the extent there is any seeming conflict in the cases, it can be explained more as a product of the varying circumstances under which Federal projects are implemented and funded than as any significant disagreement on the meaning of the law. As an example, in *United States v. Phoenix Assurance Co. of New York,* 163 F.Supp. 713 (N.D.Cal.1958), the Court held that the Miller Act applied to a construction project on an Army base where the actual contracting party was not the Government itself but an Army officer authorized to act as an agent for the Government. The Government, of course, owned the property, and the fact that its agent, rather than the Government itself, was the contracting party was not regarded as significant. Conversely, in *United States v. Harrison and Grimshaw Construction Co.,* 305 F.2d 363 (10th Cir.1962), the Court concluded that the Miller Act did not apply to the construction of housing on a military base under the Capehart Act (42 U.S.C. § 1594), where, although it owned the land, the Government was not a contracting party and both the financing and the construction were entirely private.

Most courts that have addressed the question seem to hold that, if the Government is at least a contracting party, the Miller Act applies, even if the project is structured as a lease and the Government does not actually own the land. *See Sullivan v. Faras–RLS Group, Ltd.,* 795 F.Supp. 305 (D.Ariz. 1992) and cases cited therein. On the other hand, it is clear and well established that, where the Government is neither the owner nor a contracting party, the project is not subject to the Miller Act merely because it is financed with Federal funds. *General Elec. Supply, supra,* 11 F.3d 577; *U.S. Etc., Miss. Road Supply Co. v. H.R. Morgan, Inc., supra,* 542 F.2d 262; *Kennedy Electric Co. v. United States Postal Service,* 508 F.2d 954 (10th Cir.1974); *United States v. Mattingly Bridge Co.,* 344 F.Supp. 459 (W.D.Ky.1972).

It is the latter situation that we have here. The Government does not own the land on which Johnson Towers was

built and neither it nor any authorized Government agent was a party to the contract with Tyler. It is true that HUD has assumed, as an incident of its role as funder of the project, an extensive supervisory role over the construction activity, but that alone does not make the project a public work of the United States. As the Supreme Court noted in *Armstrong v. United States,* 364 U.S. 40, 42, 80 S.Ct. 1563, 1565, 4 L.Ed.2d 1554 (1960) and the Court held in *Harrison and Grimshaw, supra,* 305 F.2d at 367, the mere fact that the property might, at some future point, be owned by the Government does not render it immune from present liens, and thus would not make the Miller Act necessarily applicable.

We see no compelling special circumstance here that would make the Miller Act applicable. The Government's role in this project was merely to fund it and generally see that it was built properly. The project is privately owned and will be privately managed. Because the payment bond was required by Federal law, it would appear that there is concurrent jurisdiction between the State and Federal courts under 28 U.S.C. § 1352.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.