# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 10, 2015   Decided April 5, 2016

No. 14-5132

DISTRICT OF COLUMBIA AND CCDC OFFICE LLC,
APPELLEES

v.

DEPARTMENT OF LABOR, ET AL.,
APPELLANTS

METROPOLITAN REGIONAL COUNCIL OF CARPENTERS,
UNINCORPORATED LABOR ORGANIZATION, ET AL.,
APPELLEES

Consolidated with 14-5133

Appeals from the United States District Court
for the District of Columbia
(No. 1:13-cv-00730)

*John S. Koppel*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Benjamin C. Mizer*, Acting Assistant Attorney General, *Vincent H. Cohen, Jr.*, Acting U.S. Attorney, and *Michael Jay Singer*, Attorney. *Jeffrica J. Lee*, Attorney, U.S. Department of Justice, entered an appearance.

*Terry R. Yellig* and *Esmeralda Aguilar* were on the brief for intervenors-defendants-appellants Metropolitan Regional Council of Carpenters, et al.

*Carl J. Schifferle*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee District of Columbia. With him on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

*Maurice Baskin* argued the cause and filed the brief for appellee CCDC Office LLC.

*Kevin J. McKeon* was on the brief for *amici curiae* Associated Builders and Contractors, Inc. and National Association of Manufacturers in support of appellee CCDC Office LLC. *Shelly L. Ewald* entered an appearance.

Before: GARLAND,[*] *Chief Judge*, KAVANAUGH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: CityCenterDC is a large private development in the heart of Washington, D.C. It features upscale retail stores such as Hermès, Boss, and Louis Vuitton; high-end restaurants such as DBGB and Centrolina; the large private law firm of Covington & Burling; and luxury residences.

---

[*] Chief Judge Garland was a member of the panel at the time the case was argued but did not participate in this opinion.

3

The question in this case is whether the Davis-Bacon Act applies to the construction of CityCenterDC. As relevant here, the Davis-Bacon Act applies when the District of Columbia enters into a "contract . . . for construction" of "public works."[1] The Act guarantees prevailing wages to construction workers on those projects. If the Act applies here, the construction workers who helped build CityCenterDC might be entitled to higher wages than they in fact received.

As the statutory definition reveals, two conditions must be present in order for the Davis-Bacon Act to apply here: (1) D.C. must have been a party to the contracts for construction of CityCenterDC, *and* (2) CityCenterDC must be a public work. To illustrate, suppose the District of Columbia contracted with a construction contractor to build a new public park. That would be a classic example of a construction project covered by the Davis-Bacon Act.

But this case differs from the classic Davis-Bacon scenario in two critical respects, each of which *independently* suffices to take the CityCenterDC construction project outside the reach of the Davis-Bacon Act.

---

[1] The relevant statutory provision provides in full: "The advertised specifications for every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public buildings and public works of the Government or the District of Columbia that are located in a State or the District of Columbia and which requires or involves the employment of mechanics or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics." 40 U.S.C. § 3142(a).

First, the District of Columbia was not a party to the construction contracts for the building of CityCenterDC. D.C. owns the land on which CityCenterDC stands, but D.C. rented the land to private developers in a series of 99-year leases. The private developers then entered into construction contracts with general contractors to build CityCenterDC. The developers – not D.C. – contracted with the construction contractors who built CityCenterDC. That matters for purposes of the Davis-Bacon Act. Put simply, because D.C. was not a party to the construction contracts, the Davis-Bacon Act does not apply to CityCenterDC.

Second, and an independent reason why the Davis-Bacon Act does not apply here, CityCenterDC is not a "public work." To qualify as a public work, a project must possess at least one of the following two characteristics: (i) public funding for the project's construction or (ii) government ownership or operation of the completed facility, as with a public highway or public park. Here, CityCenterDC's construction was not publicly funded, and CityCenterDC is not a government-owned or government-operated facility. So CityCenterDC is not a public work.[2]

In short, D.C. was not a party to the contracts for construction of CityCenterDC, and CityCenterDC is not a public work. For either of those two alternative and independent reasons, the Davis-Bacon Act does not apply to the construction of CityCenterDC.

---

[2] At least one of those two characteristics is *necessary* for a project to qualify as a public work; we need not and do not decide whether either characteristic alone is *sufficient* for a project to qualify as a public work.

It bears emphasis, moreover, that in the 80 years since its enactment, the Davis-Bacon Act has *never* been applied to a construction project such as CityCenterDC that is privately funded, privately owned, and privately operated. The novelty of the U.S. Department of Labor's interpretation strongly buttresses our conclusion that the Act does not apply here. *See, e.g.*, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000); *Loving v. IRS*, 742 F.3d 1013, 1021 (D.C. Cir. 2014).

In a thorough and persuasive opinion, the District Court held that the Davis-Bacon Act does not apply to CityCenterDC. We affirm the judgment of the District Court.

I

To evaluate whether the Davis-Bacon Act applies to the construction of CityCenterDC, we begin by examining the history of the Act, the details of CityCenterDC, and the procedural background of this case.

A

In 1931, Congress passed and President Hoover signed the Davis-Bacon Act. By that point in the Great Depression, economic activity, including construction, had already declined significantly. To offset the dropoff in private construction and to help put construction workers back to work, the Federal Government launched a variety of construction projects to build and repair public works. But the government construction projects led to a collateral problem. Some government agencies awarded construction contracts to contractors who hired cheap itinerant labor and made low-wage bids. The market impact, Congress believed,

was to depress wages for local construction workers below what the local workers otherwise would receive.

To prevent government contracts from depressing wages for local construction workers, the Davis-Bacon Act guaranteed prevailing local wages to construction workers on federal and D.C. construction projects for public buildings. Offering a succinct summary of the Act's purpose, one Member of Congress remarked: "The purpose of this bill is to require the contractors, including subcontractors, to pay not less than the prevailing rate of wages for work of a similar nature in the city, town, village, or other civil division of the State in which the public buildings are located, or in the District of Columbia." 74 Cong. Rec. 6515 (1931) (statement of Rep. Kopp) (internal quotation marks omitted).

As initially enacted, the Davis-Bacon Act covered only federal and D.C. contracts for construction of "public buildings." Pub. L. No. 71-798, 46 Stat. 1494 (1931). In 1935, Congress passed and President Franklin Roosevelt signed a new law that amended the Act to cover federal and D.C. contracts for construction of "public works," as well as public buildings. Act of Aug. 30, 1935, Pub. L. No. 74-403, 49 Stat. 1011.

B

In July 2001, a District of Columbia task force recommended a "mixed-use" urban neighborhood on the site of the D.C. convention center. In September 2002, acting on that recommendation, D.C. issued a Request for Proposals for a Development Partner. D.C. ultimately chose various developers, whom we will refer to collectively as "the Developers."

D.C. and the Developers entered into 99-year ground lease agreements for the right to use the property. Under those lease agreements, the Developers agreed to pay D.C. at least $2 million each year.

D.C. and the Developers also entered into development agreements. The development agreements obligated the Developers to, among other things, build CityCenterDC. As required by those development agreements, the Developers would enter into contracts with general contractors for construction of CityCenterDC. D.C. maintained the right to approve the Developers' general contractors for various components of the project, and to approve the construction contracts entered into between the Developers and the contractors.

Under the lease agreements and the development agreements, D.C. would not be a party to any construction contracts for the building of CityCenterDC. Rather, according to the lease agreements and the development agreements, the required follow-on construction contracts would be executed between the Developers and general contractors.

Construction of CityCenterDC began in 2011. Today, CityCenterDC is already home to several upscale shops and restaurants, and to a major private law firm. When it is finished, CityCenterDC will house approximately 60 retail stores and nearly 700 residential units. A 370-room hotel catering to luxury travelers is scheduled to open in the next three years.

To summarize the basic contractual relationships underlying CityCenterDC: (1) D.C. and the Developers entered into various lease agreements and development

agreements; and (2) those lease agreements and development agreements, in turn, directed the Developers (not D.C.) to execute construction contracts with general contractors.

D.C. provided no public funding for construction of CityCenterDC. D.C. does not occupy any space at CityCenterDC. D.C. does not own or operate any of the businesses located there. And D.C. does not offer any government services there.

C

In April 2008, a labor union – the Mid-Atlantic Regional Council of Carpenters – asked D.C. to determine whether the Davis-Bacon Act applied to the construction of CityCenterDC. In response to that request, Deputy D.C. Mayor Neil Albert concluded that the Act did not apply because "the District will not be party to any construction contracts, the project to be built will not be owned by the District and no District funds will be used to pay construction costs."

The following year, the Carpenters requested a ruling on the issue from the U.S. Department of Labor. In August 2010, the Chief of the Branch of Government Contracts at the U.S. Department of Labor ruled that the Davis-Bacon Act did not apply to CityCenterDC because the project was not a public work. The Branch Chief noted the primarily private purpose of the project and the lack of government funding, among other things.

The Carpenters administratively appealed the Branch Chief's ruling within the U.S. Department of Labor. In June 2011, the Administrator of the Wage and Hour Division of the U.S. Department of Labor overturned the Branch Chief's

decision. The Administrator determined that the various development agreements qualified as contracts for construction within the meaning of the Davis-Bacon Act. And the Administrator concluded that CityCenterDC was a public work. Describing the private component of the project as "not insubstantial," the Administrator nonetheless found that CityCenterDC "sufficiently" served the public interest to qualify as a public work.

D.C. then appealed that ruling to the Administrative Review Board of the U.S. Department of Labor. The Board affirmed, concluding that the various agreements between D.C. and the Developers were contracts for construction under the Davis-Bacon Act and, further, that CityCenterDC was a public work within the meaning of the Act.

D.C. then filed suit in federal court, seeking declaratory and injunctive relief against the U.S. Department of Labor.

On cross-motions for summary judgment, the District Court ruled for D.C. The District Court concluded that the "plain language of the statute, as well as its history and purpose" make clear that the Davis-Bacon Act does not cover private projects like CityCenterDC. *District of Columbia v. Department of Labor*, 34 F. Supp. 3d 172, 182 (D.D.C. 2014). In reaching its conclusion, the District Court noted the novelty of the position advanced by the U.S. Department of Labor: "All parties in this case agree that" the Davis-Bacon Act "has never before been applied to a project that, like CityCenterDC, is privately financed, privately owned, and privately maintained." *Id*.

Our review of the District Court's interpretation of the Davis-Bacon Act is de novo.

## II

For the Davis-Bacon Act to apply, a project must involve (1) a "contract . . . to which the Federal Government or the District of Columbia is a party, for construction" of (2) "public works." 40 U.S.C. § 3142(a). The CityCenterDC project meets neither requirement. First, D.C. is not a party to the contracts for construction of CityCenterDC. Second, CityCenterDC is not a public work.

## A

By its terms, the Davis-Bacon Act applies to construction contracts between a federal or D.C. government agency and a construction contractor. In this case, the U.S. Department of Labor seeks to stretch the Act to cover a three-party relationship in which a government agency rents property to a private developer, and the private developer in turn enters into a construction contract with a construction contractor. Or put another way, the Department contends that the Act covers contracts entered into by D.C. that are not themselves construction contracts but rather are contracts with developers where the developers will then separately enter into construction contracts with construction contractors.

No court has previously sanctioned such a significant expansion of the Davis-Bacon Act. We will not be the first.

The U.S. Department of Labor insists that the statutory term "contract . . . for construction" is sufficiently indefinite to render its reading a reasonable one deserving deference. It is true that under *Chevron*, assuming it applies here, the fundamental question is not whether we think the Department's interpretation is correct, but whether the Department's interpretation of the Act is at least reasonable in

light of any ambiguities in the statute. In making that determination, however, *Chevron* itself tells us that we must first employ the traditional tools of statutory construction to interpret the statute and to resolve any ambiguities. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). Only if we are then still left with an ambiguity do we proceed to step two. In step two, we defer to the agency's reading if that reading is at least reasonable.

"No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority.*" *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013). In this case, we conclude that the U.S. Department of Labor has not done so. Its interpretation of the phrase "contract . . . for construction" contravenes the text, structure, and purpose of the Act.

The text of the Act is straightforward. As relevant here, the Act covers contracts "for construction" to which "the District of Columbia is a party." But the parties to the contracts for construction in this case were the private developers and general contractors. The Act cannot reasonably be read to cover construction contracts, such as these, to which D.C. is *not* a party. That reading would require us to erase the phrase "to which the Federal Government or the District of Columbia is a party" from the statute. Courts are not at liberty to rewrite laws in that fashion. *See generally Milner v. Department of the Navy*, 131 S. Ct. 1259, 1271 (2011); *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 557 (2005).

Contrary to the U.S. Department of Labor's suggestion, moreover, neither the lease agreements nor the development

agreements between D.C. and the Developers are themselves contracts for construction to which D.C. is a party. A contract for construction means a contract in which one party will perform construction in exchange for the other party's payment or other consideration. The lease agreements and the development agreements were not contracts for construction under any reasonable understanding of what a contract for construction entails. Rather, those agreements refer to the eventual construction that the Developers would pay for. Those agreements define "Construction Contract" as "each contract with a General Contractor for the construction of all or any part" of CityCenterDC. D.C. itself never entered into contracts for construction of CityCenterDC.

The Department's interpretation of the statutory term "contract . . . for construction" would significantly enlarge the scope of the Davis-Bacon Act. The Department's interpretation would embrace any lease, land-sale, or development contract between the Federal Government or D.C. and another party, so long as the agreements required the counterparty in turn to undertake more than an incidental amount of construction. The terms of the Davis-Bacon Act are not so malleable. A contract for construction is a contract for construction. And a lease, land-sale, or development agreement that contemplates one of the parties entering into a future contract for construction with a third party construction contractor is not itself a contract for construction.[3]

---

[3] The Department cites a few agency decisions indicating that certain kinds of lease agreements may fall within the Davis-Bacon Act's definition of "contract . . . for construction." *See, e.g.*, *Phoenix Field Office, Bureau of Land Management*, 2001 WL 767573 (2001); *Crown Point, Indiana Outpatient Clinic*, 1987 WL 247049 (1987), *aff'd sub nom. Building & Construction Trades Department, AFL-CIO, v. Turnage*, 705 F. Supp. 5 (D.D.C. 1988); *Military Housing Ft. Drum, New York*, 1985 WL 167239 (1985).

The U.S. Department of Labor retorts that modern mixed-use projects often employ three-party relationships involving a government agency, a private developer, and a construction contractor. No doubt that is true. And the U.S. Department of Labor may ask Congress to update the statute to cover this new situation. *See* U.S. CONST. art. II, § 3, cl. 2 (Recommendations Clause). When a new situation arises outside the scope of an old statute, the proper approach under our system of separation of powers is for Congress to amend the statute, not for the Executive Branch and the courts to rewrite the statute beyond what the statute's terms can reasonably bear. As judges, we are not authorized to rewrite statutory text simply because we might think it should be updated. The Davis-Bacon Act applies only when D.C. is a party to the construction contracts. Here, D.C. was not a party to the construction contracts.

Our reading of the text of the statute finds additional support when we examine the statute's structure and purpose. The Davis-Bacon Act serves broadly as "a minimum wage law designed for the benefit of construction workers." *United States v. Binghamton Construction Co.*, 347 U.S. 171, 178 (1954). But the Act was *not* designed to directly regulate private construction contracts between private developers and private construction companies. It was designed to regulate construction contracts where the Federal Government or D.C.

---

But in those cases, unlike here, the Government was the lessee not the lessor, and the leases required construction for which the Government would pay de facto through its rental payments. So there, unlike here, the Government did in effect pay the costs of construction, albeit indirectly, through the rental payments it made as lessee. In any event, even if those scattered agency decisions were squarely on point, they would not bind this Court. Because those agency decisions are not on point, however, we need not decide whether we agree with them.

was a party. To suddenly extend Davis-Bacon's coverage to a large swath of private construction projects would end-run the statute's careful line-drawing and thwart the structure and targeted purpose of the statute.

It bears emphasis, moreover, that the U.S. Department of Labor's interpretation would generate significant anomalies.

First, if we were to rule that the Davis-Bacon Act applied to CityCenterDC, D.C. would suddenly owe approximately $20 million in backpay. *See* 29 C.F.R. § 1.6(f) (requiring D.C. to pay any increase in wages mandated by the Davis-Bacon Act). To put it in perspective, that sum equals the combined annual salaries of more than 200 D.C. teachers or police officers. But it would be odd to require D.C. – rather than the Developers – to pay that amount now. After all, D.C. did not pay (and therefore did not allegedly underpay) the salaries to begin with. D.C. did not build CityCenterDC or pay for the construction of it.

Second, if we were to rule that the Davis-Bacon Act applied to the construction of CityCenterDC, the Act would also apply to any significant future improvements within CityCenterDC. After all, D.C.'s agreements with the Developers require the Developers not only to construct the buildings but also to undertake any repairs or alterations to ensure that the buildings meet first-class standards. Imagine an overhaul of the gym at one of the luxury rental apartments in CityCenterDC. Or a new conference room built at the Covington & Burling law firm in CityCenterDC. Under the Department's theory, those construction projects would be covered by the Davis-Bacon Act. But that is quite absurd, of course. No doubt recognizing as much, even the U.S. Department of Labor has disclaimed the notion that those kinds of improvements would be encompassed by the Act.

But what the Department has not done – and cannot do – is identify a logical principle that applies the Davis-Bacon Act to the construction of CityCenterDC but not to the construction of those hypothetical improvements to CityCenterDC.

In short, after examining the text, structure, and purpose of the Davis-Bacon Act, as well as the consequences of applying the Act to the construction of CityCenterDC, we conclude that the Act does not apply because D.C. was not a party to the contracts for construction of CityCenterDC.[4]

B

Even if D.C. were a party to the contracts for construction of CityCenterDC, the Davis-Bacon Act still would not apply because CityCenterDC is not a public work.

The Davis-Bacon Act applies to "public buildings" and "public works." Those terms have some overlap. Even though CityCenterDC is a building (actually, a group of buildings), the U.S. Department of Labor does not contend that CityCenterDC is a public building. That is not surprising. CityCenterDC is a private building. But the Department nonetheless claims that this private building is a "public work." We disagree. As the District Court observed, CityCenterDC is quite obviously "an enclave of private

---

[4] What about a sham arrangement that a federal agency or D.C. enters into with an intermediary just to avoid contracting directly with a construction contractor, all for the purpose of avoiding the Davis-Bacon Act? The U.S. Department of Labor does not claim that D.C. engaged in such a sham here. We therefore need not consider whether such a sham exception exists, and if so, what its contours might be.

facilities," not a public work. *District of Columbia v. Department of Labor*, 34 F. Supp. 3d 172, 175 (D.D.C. 2014).

In 1935, when Congress amended the Davis-Bacon Act to cover "public works" as well as "public buildings," the phrase "public works" carried a meaning similar to its current meaning. Think, for example, of public roads, dams, parks, railroads, canals, and docks. The 1933 edition of *Black's Law Dictionary* defined "public works" as follows: "Works, whether of construction or adaptation, undertaken and carried out by the national, state, or municipal authorities, and designed to subserve some purpose of public necessity, use, or convenience; such as public buildings, roads, aqueducts, parks, etc." (3d ed. 1933). The *Black's* definition cited a series of cases involving public works that ranged from a government-owned dam to a public road financed with municipal bonds.

Dictionaries from that era supplied similar definitions. One defined public works to encompass "[a]ll fixed works constructed or built for public use or enjoyment, as railroads, docks, canals, etc., or constructed with public funds and owned by the public; often, specif., such works as constitute public improvements, as parks, museums, etc., as distinguished from those involved in the ordinary administration of the affairs of a community, as grading of roads, lighting of streets, etc." *Webster's New International Dictionary* (2d ed. 1934). The *New Standard Dictionary of the English Language* defined public works as "permanent works or improvements made for public use or benefit, as roads, canals, or harbors, especially such as are made by or at the expense of the local or central government." (1937). And *The American College Dictionary* defined the term as "constructions as roads, dams, post offices, etc. out of government funds for public use." (1947).

The meaning has not changed over time. The current edition of *Black's Law Dictionary* defines "public works" as "[s]tructures (such as roads or dams) built by the government for public use and paid for by public funds." (10th ed. 2014 online). *The American Heritage Dictionary* defines the term as "[c]onstruction projects, such as highways or dams, financed by public funds and constructed by a government for the benefit or use of the general public." (5th ed. 2015 online).

In the 1933 National Industrial Recovery Act, enacted two years before Congress added "public works" to the Davis-Bacon Act, Congress defined "public works" as "any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public." Pub. L. No. 73-67, § 202, 48 Stat. 195, 201 (1933). The Supreme Court later adopted that definition when interpreting the statutorily undefined phrase "public work" in the 1935 Miller Act, a statute that required contractors on certain public works projects to post bonds securing their payment obligations. *See United States v. Irwin*, 316 U.S. 23, 28 (1942).

Exercising its authority to enforce the Davis-Bacon Act, the U.S. Department of Labor has long maintained a regulation that defines "public work" in largely the same way that the National Industrial Recovery Act and the *Irwin* Court did: "The term *public building* or *public work* includes building or work, the construction, prosecution, completion, or repair of which, as defined above, is carried on directly by authority of or with funds of a Federal agency to serve the interest of the general public regardless of whether title thereof is in a Federal agency." 29 C.F.R. § 5.2(k).

Although all of these various definitions do not align perfectly, it is clear enough that a project must possess at least one (if not both) of the following two characteristics[5] in order to qualify as a public work under the Davis-Bacon Act: (i) public funding for the construction or (ii) government ownership or operation of the completed facility.[6]

---

[5] At least one of the two characteristics is *necessary* for a project to qualify as a public work; we need not and do not decide whether either characteristic alone is *sufficient* for a project to qualify as a public work.

[6] For a project to qualify as a public work, the U.S. Department of Labor regulation requires the first of these two characteristics – public funding for the construction – but does not appear to require the second – government ownership or operation of the completed facility. In this case, the U.S. Department of Labor argues to this Court that its regulation actually requires *neither* of those characteristics. In particular, the Department says that the phrase "construction . . . carried on directly by authority of or with funds of a Federal agency" includes situations where D.C. neither builds the project nor expends funds for construction, but merely leases land to a developer who then pays for the construction by contracting with a general contractor. We disagree. The Department has not cited any cases where it has previously interpreted this regulatory language to stretch to situations in which there is no public funding for the construction. So, too, the Department has cited no cases in which the similar language in the National Industrial Recovery Act or the Miller Act has been applied to a project with no public funding for the construction. In light of the history, context, and terms of the regulation, the Department's reading of its regulation is not reasonable. It would vastly expand the coverage of the regulation – and indeed would stretch the regulation beyond what the statute can reasonably bear. Put simply, the interpretation that the Department offers to this Court is inconsistent with the regulation, *see Auer v. Robbins*, 519 U.S. 452 (1997), and if adopted would make the regulation inconsistent with the statute, *see Chevron*, 467 U.S. 837 (1984).

Therefore, to determine whether CityCenterDC is a public work, we must assess whether CityCenterDC possesses at least one of the following two characteristics: (i) public funding for the construction of CityCenterDC or (ii) government ownership or operation of CityCenterDC. CityCenterDC possesses neither characteristic.

First, D.C. did not expend funds for the construction of CityCenterDC. Quite the opposite. The Developers make substantial rental payments *to D.C.* Those rental payments to D.C. pad D.C.'s coffers, not drain them. By contrast to this arrangement, *every* case cited by the Department concerning the scope of the Davis-Bacon Act involved the expenditure of public funds for construction. *See, e.g.*, *Binghamton Construction Co.*, 347 U.S. at 173; *Tom Mistick & Sons, Inc. v. Reich*, 54 F.3d 900, 902 (D.C. Cir. 1995); *see also Irwin*, 316 U.S. at 27 (interpreting "public work" in the Miller Act to cover publicly funded university library). The Department cites no cases – zero – where no public funds were expended for construction and the project was nonetheless declared a public work for purposes of the Davis-Bacon Act. This will not be the first.

Second, D.C. does not own or operate CityCenterDC. CityCenterDC is privately owned and privately operated. To use the District Court's apt description, CityCenterDC is "an

---

In this case, moreover, it is doubtful that this regulation even applies to D.C.'s contracts for construction in the first place, as the District Court noted. *District of Columbia v. Department of Labor*, 34 F. Supp. 3d at 191. The terms of the regulation apply only to federal agency contracts for construction, not to D.C. contracts for construction. But we need not rest on that point here, because, in any event, CityCenterDC is not a public work under the statute or regulation.

enclave of private facilities." *District of Columbia v. Department of Labor*, 34 F. Supp. 3d at 175.

In short, CityCenterDC possesses neither characteristic of a public work.

In arguing that CityCenterDC nonetheless should be considered a public work, the U.S. Department of Labor emphasizes that D.C. helped plan CityCenterDC and that the project will produce benefits for the public. But that is true of many private projects. Through its zoning, taxing, and regulatory powers, D.C. and other local governments are often intimately involved in attracting, planning, approving, and regulating private development, often down to the nitty-gritty details. And private development often benefits the public by creating jobs, generating tax revenues, and providing places for work, housing, recreation, and entertainment. That's why local governments, including D.C., get deeply involved in zoning and urban planning in the first place. But those realities do not transform the Davis-Bacon Act into an all-encompassing prevailing wage law for private development projects in D.C.

Make no mistake: Under the Department's reading, many future D.C. construction projects that are privately funded, privately owned, and privately operated would be covered by the Davis-Bacon Act, at least so long as the Federal Government or D.C. has some hand in leasing the property or even just in planning or approving the use of the property. We are unwilling to green-light such a massive, atextual, and ahistorical expansion of the Davis-Bacon Act. The concept of a public work may well be elastic. But it cannot reasonably be stretched to cover a Louis Vuitton. CityCenterDC is not a public work.

\* \* \*

The U.S. Department of Labor has advanced a novel reading of the Davis-Bacon Act that would significantly enlarge the number and kinds of construction projects covered by the Act. Expanding the coverage of the Davis-Bacon Act in this way may or may not be a wise policy decision. But that choice belongs to the political branches, which may enact new legislation if they so choose. Our job is to construe the statute as written and long understood. The Department's interpretation of the Davis-Bacon Act contravenes the statute. To use the administrative law vernacular, the Department's interpretation fails *Chevron* step one because it is foreclosed by the statute. In any event, the Department's interpretation would likewise fail *Chevron* step two because it is unreasonable in light of the statute's text, structure, and purpose. We affirm the judgment of the District Court.

*So ordered.*